New Orleans Tractor Company, Inc., Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 80018.   Promulgated December 29, 1936.

*Thomas A. Williams, Esq.*, for the petitioner.
*L. W. Creason, Esq.*, for the respondent.

#### OPINION.

Tyson: This proceeding involves income tax deficiencies in the amounts of $426 for the year 1930 and $291.16 for the year 1931.

Petitioner assigns as error, for both years, the respondent's disallowance of deductions of $3,550 for 1930 and $2,292 for 1931 as commissions paid to R. H. Brothers, based upon respondent's determination that such commissions did not constitute ordinary and necessary business expenses.

Petitioner is a Louisiana corporation, having its principal office in the city of New Orleans. During the years in controversy it was engaged in the business of selling tractors and road machines. It had an exclusive agency agreement with the Caterpillar Tractor Co. of Peoria, Illinois, to sell that company's products in a territory embracing approximately the southern half of the State of Louisiana, and the compensation to be received by it was 20 percent on the list prices of tractors sold by it. Petitioner regularly employed two or three salesmen, each of whom was paid a fixed salary, expenses, and 1 percent commission on sales, which amounted to something in excess of the 10 percent paid Brothers as commissions. Petitioner's entire exclusive territory was divided between those salesmen.

In January of 1930, and after W. H. George, petitioner's president, and Brothers had been brought together by one Easton of the Easton Tractor & Equipment Co., petitioner, through its president, George, made an oral agreement with Brothers to pay him a commission of 10 percent of the list price, f. o. b. factory, on all Caterpillar tractors sold by him on behalf of petitioner to the Louisiana State Highway Commission, and this commission was reasonable in amount. Brothers, who lived in Baton Rouge, where the Louisiana State Highway Commission was located, was required under the agreement to pay his own expenses and he was employed for the sole

purpose of making sales to the highway commission, and any other department of the state government. Brothers was employed in the same capacity by the Easton Tractor & Equipment Co., whose exclusive agency for Caterpillar tractors embraced the northern half of the State of Louisiana, and he also represented, as salesman, several other concerns engaged in selling road machinery or other merchandise to the highway commission and other departments of the Louisiana State Government.

The reasons for petitioner's employment of Brothers were that other concerns were making sales through Brothers to the Louisiana State Highway Commission, whereas, petitioner's predecessor agent had been unable to make any sales; that Brothers' close, friendly connection with the state administration and the following he had built up around the highway department enabled him to make sales that others could not make to the highway commission.

During the years 1930 and 1931 Brothers made a number of sales of tractors on behalf of petitioner to the Louisiana State Highway Commission, to which commission such tractors were billed at the regular list price plus freight, just as was done in the case of each other customer. The total list price of such sales of tractors amounted to $34,000 during 1930 and $24,420 during 1931, or a total of $58,420 for the two years here in controversy. At various times during those two years Brothers drew drafts on petitioner, which were honored by petitioner's checks payable to the banks through which the drafts were presented. Prior to the time any sales were made by Brothers on behalf of petitioner, the latter, in February 1930, honored his draft for $250 as advanced commissions and also, sometime in the spring of 1930, in order to enable Brothers to obtain a loan for $2,000, W. H. George, petitioner's president, endorsed Brothers' 60-day note, in that amount, payable to the Whitney National Bank. The $2,000 so obtained by Brothers was considered and treated by petitioner as advanced commissions paid on sales of tractors to be made by Brothers. The note was renewed several times and finally paid by petitioner on November 17, 1930, at which time the commissions due and credited to Brothers' account on sales of tractors made to the Louisiana State Highway Commission on behalf of petitioner equaled slightly more than the face amount of the note. Frequently, Brothers drew on petitioner in advance or in excess of the 10 percent commissions on sales completed by him. During 1930 and 1931 petitioner paid to Brothers commissions in the amounts of $3,550 and $2,400, respectively, or a total $5,950, on sales of Caterpillar tractors made by him for petitioner to the Louisiana State Highway Commission. At the end of the year 1931 petitioner charged off, as a bad debt, the then existing excess of $108 paid to

Brothers over the amount of commissions due him on sales of tractors made during the two-year period and this amount of $108 is not involved here.

In its income tax returns for the years 1930 and 1931 petitioner included in gross income the gross sales made by Brothers and claimed as deductions, on account of the commissions paid to Brothers, the amounts of $3,550 for 1930 and $2,292 for 1931 as ordinary and necessary business expenses. Respondent disallowed the claimed deductions upon his determination that the amounts so paid to Brothers were not *ordinary* and *necessary* business expenses within the meaning of section 23 (a) of the Revenue Act of 1928.

The agreement under which Brothers made the sales to the Louisiana State Highway Commission and for which he was paid the above mentioned commissions was entered into by petitioner for the purpose of utilizing, in the making of said sales, the *personal influence* Brothers had with the state administration and the highway commission officials.

The question here involved is the same as that considered in the case of *Easton Tractor & Equipment Co.*, 35 B. T. A. 189, wherein it was held that an agreement similar to the one here involved, between Brothers and petitioner, was void and unenforceable as contrary to public policy and, further, that commissions paid pursuant to such an agreement did not constitute such an ordinary and necessary business expense as was contemplated by the applicable revenue act. The holding in that case is controlling here and we consequently affirm the respondent's determination in this proceeding.

*Decision will be entered for respondent.*