**DUKEHART–HUGHES TRACTOR & EQUIPMENT CO., Inc., a Corporation,**

v.

**The UNITED STATES.**

No. 534–59.

United States Court of Claims.
Feb. 19, 1965.

Davis, J., dissented in part.

James F. Swift, Des Moines, Iowa, for plaintiff. James F. Swift, Jr., Des Moines, Iowa, of counsel.

David D. Rosenstein, Washington, D. C., with whom was Louis F. Oberdorfer, Asst. Atty. Gen., Washington, D. C., for defendant. C. Moxley Featherston, Lyle

M. Turner and Philip R. Miller, Washington, D. C., were on the brief.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

COWEN, Chief Judge (delivered the opinion of the court):

This is a suit for refund of corporate income taxes, plus interest, arising out of the disallowance by the Commissioner of Internal Revenue of certain deductions for business expenses on plaintiff's 1953, 1954, 1955 and 1956 corporate income tax returns.

The issue in this action is whether those disallowed items, which represent the expenses incident to the entertainment of, and gifts to, public officials, are deductible as ordinary and necessary business expenses under 26 U.S.C. (I.R. C.1939) § 23(a) (1) (A) (1952 Ed.)[1] and 26 U.S.C. (I.R.C.1954) § 162 (1958 Ed.)[2], because those expenditures contravene the public policy of the State of Iowa.

Plaintiff is an Iowa corporation with principal offices in Des Moines. Its principal business is the sale and servicing of road building and other construction machinery. It is an authorized distributor for Allis-Chalmers Co., whose products represent a majority of plaintiff's sales. During the tax years in question, plaintiff's sales territory covered a large part of the State of Iowa.

Seventy percent of plaintiff's total sales for the 4 years, 1953–1956, or about $4,500,000, was attributable to the sale of new or used construction machinery. Of this amount, two-thirds represented purchases by non-governmental sources and one-third consisted of sales to municipal, county, or State agencies in Iowa.

To foster sales of its merchandise, plaintiff employed a staff of salesmen who traveled extensively throughout the State of Iowa making periodic calls on potential purchasers, both private and governmental.

During the course of these calls, plaintiff's salesmen often took the private customers, as well as the Government officials to lunch. In addition, the salesmen provided entertainment for and made gifts to potential buyers. The exact nature of these items will be described below. The Commissioner of Internal Revenue allowed as ordinary and necessary business expenses all of the expenditures attributable to the solicitation of business from non-governmental sources, but he disallowed all expenses attributable to the entertainment of, and gifts for, public officials.

The nature of the expenditures are summarized in the categories listed below.

1. *Fishing trips.* Potential buyers were taken in both large and small groups, accompanied by plaintiff's salesmen, on fishing trips to northern Minnesota. The salesmen selected the persons who were included in each trip.

2. *Other trips.* Prospective buyers were taken to various midwestern cities for the purpose of visiting the plants of plaintiff's suppliers and/or attending football or baseball games.

3. *Conventions.* At general contractors', State officials' and local officials' conventions, plaintiff, along with other firms similarly situated, would make financial contributions to help defray convention costs, and, in return, would be

---

[1] "SEC. 23. DEDUCTIONS FROM GROSS INCOME.
"In computing net income there shall be allowed as deductions:
"(a) *Expenses.*—
"(1) *Trade or business expenses.*—
"(A) *In general.*—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *."

[2] Internal Revenue Code of 1954:
"SEC. 162. TRADE OR BUSINESS EXPENSES.
"(a) *In General.*—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *."

listed as a convention sponsor. During the conventions, plaintiff would sometimes give luncheons and/or maintain a hospitality room.

4. *Tickets for Athletic Events and the State Fair.* Plaintiff made available for distribution by its salesmen tickets to athletic events. At its State Fair exhibit, plaintiff distributed grandstand tickets to potential buyers visiting the exhibit.

5. *Dinners.* During the course of their regular visits to potential buyers, plaintiff's salesmen often took them to lunch or dinner. Often, salesmen of competing firms would jointly take the customer to lunch or dinner and the cost of the meals would be divided among the salesmen of the various companies.

6. *Golf tournaments.* Plaintiff sponsored an annual golf tournament for employees of the Iowa State Highway Commission.

7. *Christmas Gifts.* Christmas gifts, which usually cost less than five dollars, were given to potential buyers. These gifts contained plaintiff's name and an appropriate holiday greeting.

All of the gifts, trips, meals, tickets, and entertainment were furnished without distinction to representatives of potential buyers, both in and out of Government. Their distribution was widespread and no distinction was made on the basis of actual past purchases, nor were they conditioned on a particular future transaction.

■ Plaintiff and other businesses similarly situated do little conventional advertising. It is the practice to advertise among their limited group of potential buyers by the use of personal contacts, with their attendant niceties, as elaborated above. The record in this case indicates that such expenditures were intended primarily to establish good will for the plaintiff and to familiarize potential purchasers with plaintiff's products. There is no evidence that the expenditures were used to induce any particular purchase, that any gifts or

entertainment were used as reward for a past purchase, or that any particular official was favored by plaintiff's bounty.

There is little dispute as to the pertinent facts of this case. There also seems to be little doubt that the expenses incurred by plaintiff was of a type prevalent for the business concerned and that they were important to insure the financial success of plaintiff's business. Therefore, we may conclude that the expenses were "ordinary" and "necessary" in the natural and common meaning of those words. Welch v. Helvering, 290 U. S. 111, 54 S.Ct. 8, 78 L.Ed. 212 (1933). Hence, such expenses were permissible deductions within the purview of Section 162 of the 1954 Internal Revenue Code and its predecessor, unless we find that such expenses are repugnant to a "sharply defined public policy" of the State of Iowa, Tank Truck Rentals, Inc. v. Commissioner, 356 U.S. 30, 78 S.Ct. 507, 2 L.Ed.2d 562 (1958); Commissioner v. Sullivan, 356 U.S. 27, 78 S.Ct. 512, 2 L. Ed.2d 559 (1958); Lilly v. Commissioner, 343 U.S. 90, 72 S.Ct. 497, 96 L.Ed. 769 (1952); Commissioner v. Heininger, 320 U.S. 467, 64 S.Ct. 249, 88 L.Ed. 171 (1943); see generally, Comment, Business Expenses, Disallowance, and Public Policy: Some Problems of Sanctioning with the Internal Revenue Code, 72 Yale L.J. 108 (1962); 4 Merten's Law of Federal Income Taxation, § 25.131 (1960).

■ The defendant advances two major contentions: (1) The expenses in question here contravene the provisions of Sections 739.10, 739.11 and/or 741.1 of the Iowa Code Ann. (1950) and are therefore repugnant to the public policy of the State of Iowa; and (2) even if the above statutes are not violated, there is an infringement of some more generalized public policy, which also constitutes a "sharply defined" public policy of the State of Iowa.

I. *Iowa Statutory Pattern*

Violations of Section 739.10 of the Iowa Code [3] entitled "Accepting reward

---

3. 55 Iowa Code Ann. § 739.10 (1950):
 "§ 739.10 Accepting a reward for public duty.

"If any state, county, township, city, school, or other municipal officer, not mentioned in this chapter, directly or in-

for public duty," and of section 739.11,[4] entitled "Corruptly influencing officials" are felonies. On their face, both statutes are aimed at preventing a public official from receiving, and another from giving him, anything of value in exchange for his performing a specific official act or acts. These sections do not apply to the case at bar. We have adopted the Trial Commissioner's finding that the entertainment and gifts involved here were not provided with a view to corruptly influencing the recipients nor were they, in any way, conditioned upon the doing of an official act.

 Section 741.1 of the Iowa Code[5] is broader and provides:

"It shall be unlawful for any agent, representative, or employee, officer or any agent of a private corporation, or a public officer, *acting in behalf of a principal in any business transaction,* to receive, for his own use, directly or indirectly, *any gift, commission, discount, bonus, or gratuity* connected with, relating to, or growing out of *such business transaction;* and it shall be likewise unlawful for any person, whether acting in his own behalf or in behalf of any copartnership, association, or corporation, to offer, promise, or give directly or indirectly any such gift, commission, discount, bonus, or gratuity." [Emphasis added]

Upon the record before us, we conclude that this statute is aimed at kick-backs in both governmental and non-governmental business transactions and does not, per se, bar entertainment of or gifts to agents of potential customers. The statute refers to "transaction" in the singular, implying that it is aimed at bounties paid in connection with a particular transaction. The enumeration, "gift, commission, discount, bonus, or gratuity", in this context is an elaboration of types of kick-backs.

We have additional evidence, both affirmative and negative, of the interpretation placed on this statute by the Iowa authorities. We have been directed to no prosecution of a public official under the above-quoted act (or any other act) for simply receiving a gift from a potential seller. Further, of four opinions of the Iowa Attorney General involving the prd Iowa Attorney General involving the predecessors of this section, three[6] discuss prohibitions against public officials contracting with a company in which they have a direct or indirect financial interest. This is the situation covered by the case of Bay v. Davidson, 133 Iowa 688, 111 N.W. 25, 9 L.R.A.,N.S., 1014 (1907) cited by defendant. The fourth opinion of the State's Attorney General[7] held that a county official was not precluded from going as the guest of the contractor to

directly accept any valuable consideration, gratuity, service, or benefit whatever, or the promise thereof, other than the compensation allowed him by law, conditioned upon said officer's doing or performing any official act, casting an official vote, making or procuring the appointment of any person to a place of trust or profit, or using his official influence or authority to give or procure for any person public employment, or conditioned upon said officer's refraining from doing or performing any of the foregoing acts or things, he shall be imprisoned in the penitentiary not exceeding two years, or in the county jail not exceeding one year, or fined in any sum not less than twenty nor more than three hundred dollars."

4. 55 Iowa Code Ann. § 739.11 (1950):
"§ 739.11 Corruptly influencing officials.

"If any person, directly or indirectly, give, offer, or promise, or conspire with others to give, offer, or promise to any officer contemplated in this chapter any valuable consideration, gratuity, service, or benefit whatever, with a view or for the purpose of corruptly influencing said officer's official acts or votes, such person shall be imprisoned in the penitentiary not exceeding two years, or in the county jail not exceeding one year, or be fined in any sum not exceeding three hundred nor less than twenty dollars."

5. 55 Iowa Code Ann. § 741.1 (1950).

6. [1930] Iowa Atty.Gen.Rpt. 232; [1928] Iowa Atty.Gen.Rpt. 296; [1928] Iowa Atty.Gen.Rpt. 399.

7. [1911–1912] Iowa Atty.Gen.Rpt. 594.

the latter's plant to view his equipment, provided the trip was not conditioned on the official's approval of the sale. A deep concern with self-dealing by public officials and with kick-back arrangements seems to pervade the Iowa statutes. There are at least fourteen [8] of these two types of statutes appearing in various chapters of the Iowa Code.

The evidence shows and we have found that the expenditures in issue here were not made as a specific inducement for a particular sale, or as a reward for a particular purchase from plaintiff.

There appears in Chapter 741 of the Iowa Code, in the same chapter as section 741.1, the only section of the Iowa Statutes that purports to ban all gifts to public officials. It provides:

"§ 741.6 Institutional officers not to receive gratuities

"No member of the board of control, or officer, agent, or employee thereof, and no superintendent, officer, manager, or employee of any of the institutions under the charge and control of said board, shall, directly or indirectly, for himself or any other person or for any institution under the charge of said board, receive or accept any gift or gratuity from any person or persons, firm, or corporation who are dealers in goods, merchandise, or supplies which may be used in any of said institutions, or from any employee, servant, or agent of such person or persons, firm, or corporation."

The Iowa Board of Control administers Iowa's Soldier's Home, the State hospitals, the State orphanage, the State reformatories, and the State prisons, 11 Iowa Code Ann. § 218.1 (1950).

The significance of this statute is that it demonstrates that the legislature of Iowa knew how to prohibit all gifts from potential Government contractors to State officials. It further appears that the legislature elected to lay such an inhibition only upon a limited class of public officials, i. e., those connected with the eleemosynary institutions enumerated above. We must therefore conclude that the legislature did not intend to bar all public officials from receiving gifts from potential contractors.

Upon the above analysis and the record in this case, we hold that the expenditures by plaintiff did not violate any statute of the State of Iowa. It has not been suggested here that there is any other governmental declaration touching directly on this subject, i. e., executive, departmental, commission regulation, or order.

## II. *Other Public Policy Considerations*

Defendant also asserts that some more generalized concept of public policy, other than that contained in the specific lan-

---

8. Iowa Code Ann. (1950): § 15.3 (State Printing Board); § 18.4 (Superintendent of Public Buildings); § 86.7 (Industrial Commission); § 252.29 (County Welfare Agencies); § 262.10 (State Board of Education); §§ 310.14, 313.10, 314.2 (State Highway Commission); § 347.15 (County Public Hospitals); § 368A.22 (City Officials); § 372.16 (River Front Commissions); § 741.11 (Boards of Supervisors).

Typical of these statutes are the following:

"§ 741.8 State employees not to be interested in contracts

"It shall be unlawful for any trustee, warden, superintendent, steward, or other officer of any educational, penal, charitable, or reformatory institution, supported in whole or in part by the state, to be interested directly or indirectly in any contract to furnish or in furnishing provisions, material, or supplies of any kind, to or for the institution of which he is an officer; and it shall be unlawful for any such trustee, warden, superintendent, steward, or other officer of any state institution, to be directly or indirectly interested in any contract with the state to build, repair, or furnish any institution of which he may be an officer."

"§ 741.9 State employees not to receive gratuities

"It shall be unlawful for any such trustee, warden, superintendent, steward, or other officer, directly, or indirectly, to receive in money or any valuable thing any commission, percentage, discount, or rebate on any provision, material, or supplies furnished for or to any institution of which he is an officer."

guage of the statutes, renders plaintiff's expenditures violative of some "sharply defined public policy".

Defendant's only citation of Iowa authority, Bay v. Davidson, supra, deals with a different situation than that which appears in the instant case and has been discussed above. This case alone does not declare even by dicta any definitive public policy with respect to entertainment of public officials.

Except for three Tax Court decisions referred to below, the other cases cited by defendant are inapposite. They are from other States or they deal with practices which are in no way comparable to those that are the subject of this action. They involve payments or rewards to Government officials (usually legislators) for their political influence in obtaining a public contract or other favor for the donee, Harden Mortgage Loan Co. v. Commissioner, 137 F.2d 282 (10th Cir. 1943), cert. denied, 320 U.S. 791, 64 S.Ct. 206, 88 L.Ed. 476; Rugel v. Commissioner, 127 F.2d 393 (8th Cir. 1942); Messenger Publishing Co., 10 CCH Tax Ct. Mem. 988 (1947) aff'd without opinion; 168 F.2d 903 (3d Cir. 1948); William T. Stover Co., Inc., 27 T.C. 434 (1956); T. G. Nicholson, 38 B.T.A. 190 (1938); Easton Tractor & Equipment Co., Inc., 35 B.T.A. 189 (1936); New Orleans Tractor Co., 35 B.T.A. 218 (1936); or they cover situations in which a public official or other person received a kickback, United Draperies, Inc., 41 T.C. 457 (1964); Fred D. Newman, 11 CCH Tax Ct. Mem. 908 (1952); Dixie Machine Welding & Metal Works v. United States, 315 F.2d 439 (5th Cir. 1963), cert. denied 373 U.S. 950, 83 S.Ct. 1679, 10 L.Ed.2d 705.

We are left with those few cases in the Tax Court, that purport, per se, to deny a deduction for entertainment of or gifts to public officials, even in the absence of any indication of wrongdoing. The basis for the disallowance is an unelaborated public policy. Duval Motor Co., 28 T.C. 42 (1957), aff'd on other grounds, 264 F.2d 548 (5th Cir. 1959); Cecil J. Haas, 12 CCH Tax Ct. Mem. 1117 (1953);

Raymond F. Flanagan, 47 B.T.A. 782 (1942). We believe these cases to be in conflict with the Supreme Court's decision in Lilly v. Commissioner, supra.

In Tank Truck Rentals, Inc. v. Commissioner, supra, the Supreme Court laid down the following test:

"A finding of 'necessity' cannot be made, however, if allowance of the deduction would frustrate *sharply defined national or state policies* proscribing particular types of conduct, *evidenced by some governmental declaration thereof."* [emphasis added].

In Lilly v. Commissioner, supra, the Supreme Court refused to sanction the disallowance of a business expense deduction for rebates from opticians to physicians, where the practice was not prohibited by State law, regulation or order, even though the contracts for rebate were unenforceable as against public policy and the practice was condemned by the local professional societies. The Court found no sharply defined public policy evidenced by some governmental declaration.

The instant case is in a similar posture and with a weaker set of facts. Defendant can point to no executive or legislative declaration of public policy that would prohibit the practices of plaintiff in issue. It has cited no court decision in point and has not even presented any quasi-official criticism of the practice. Therefore, we must conclude that the rule in Tank Truck and Lilly controls this case and that, absent a State or national statute or regulation, there exists no sharply defined public policy upon which to ground disallowance of an otherwise permissible business expense deduction.

It is to be noted that the type of expenses incurred by plaintiff were for purposes which are representative of a widespread commercial practice in Iowa and elsewhere. There is no showing that these practices have been objected to by the courts, the executive, or the legislature of Iowa. Even if we assume *ad*

*arguendo,* that plaintiff's practices violated any Iowa statute, it may well be that Iowa "public policy" is something more than just the wording of a statute.[9] It is not uncommon for statutes to derive meaning from long standing executive practice acquiesced in by the legislature. But we need not reach this point.

We conclude that the expenditures incurred by plaintiff in providing gifts to and entertainment for Iowa public officials did not violate any sharply defined public policy of the State of Iowa. We express no approval of the practices herein described, for it is not our function to approve or condemn. The regulation of such practices rests within the sound discretion of the legislature, the executive, and the courts of the State of Iowa.

Plaintiff is entitled to recover the additional taxes and statutory interest paid as a result of the disallowance of the deductions for the years in suit. Judgment for plaintiff is entered to that effect. The amount of recovery is to be determined pursuant to Rule 47(c)(2).

DAVIS, Judge (concurring in part and dissenting in part):

To my mind, a "sharply defined" policy barring much of the claimed deduction (see Tank Truck Rentals, Inc. v. Commissioner, 356 U.S. 30, 33–34, 78 S.Ct. 507 (1958); Lilly v. Commissioner, 343 U.S. 90, 96–97, 72 S.Ct. 479 (1952); Commissioner v. Heininger, 320 U.S. 467, 473–74, 64 S.Ct. 249 (1943)) is supplied by Section 741.1 of the Iowa Code (quoted in the court's opinion). That provision (headed "Accepting or giving") made it unlawful for the taxpayer to "give directly or indirectly" "any gift" or "gratuity"—"connected with, relating to, or growing out of" a "business transaction"—to "a public officer, acting in behalf of a principal" in that "business transaction." The larger expenditures for the benefit of the governmental officials in this case were gifts or gratuities made to them only because they represented ("act[ed] in behalf of a principal") state, county, or municipal units which had bought or might buy from the taxpayer; these gifts or gratuities were not private favors but were clearly connected with, related to, and grew out of business transactions, past and potential, between the taxpayer and the employing agencies. To the ordinary eye, the fit is snug enough.

The court, however, puts this statute aside as limited solely to kick-backs paid on particular sales or purchases. The words are not so restricted, and no Iowa decision or ruling carries that suggestion. Kick-backs on specific transactions are largely prohibited by other parts of the Iowa Code (see the court's footnote 8, especially § 741.9, "State employees not to receive gratuities"). Section 741.1 seems definitely to go further. I cannot join in drawing the contrary inference from the mere absence of reported or known cases applying the section to gifts or gratuities like those made by taxpayer, or from opinions of the state Attorney General which happen to be concerned with kick-backs strictly, or with other situations quite different from that facing us. The use of the singular, "business transaction", is not very meaningful in an enactment which broadly covers "*any* gift, commission,

9. Failure to enforce the Mississippi prohibition statutes, plus a State statute which taxed "black market" sales of liquor was held to have vitiated the public policy embodied in the prohibition law, Stacy v. United States, 231 F.Supp. 304 (S.D.Miss.1963); but see, Al J. Smith, 33 T.C. 861 (1960).

Certain penalties for violations of law may even be deductible, see, e.g., Keystone Metal Co. v. Commissioner, 264 F. 2d 561 (3d Cir. 1959). In Kirtz v. United States, 157 Ct.Cl. 824, 304 F.2d 460 (1962), this court was faced with a situation where the Ohio State Insurance Commissioner was fully apprised of rebates in premiums from an insurance agent to finance company officers. This practice was presumably violative of Page's Ohio Rev.Code Ann. §§ 1317.04, 1317.05 and 3905.21. Since the insurance commissioner had not determined that the practice violated a State law or a well-defined public policy, the deductions were allowed.

discount, bonus, or gratuity *connected with, relating to, or growing out of*" a business transaction (emphasis added); the gifts and gratuities here were certainly connected and related to, and grew out of, past and anticipated business transactions between taxpayer and the state, county, and municipal governments.[10] And the differing wording of § 741.6 ("Institutional officers not to receive gratuities"), covering one special sector of Iowa officialdom, does not persuade me that the legislature desired to forbid only those employees from receiving gifts and gratuities from vendors. Section 741.6 sweeps over all "dealers in goods, merchandise, or supplies which *may* be used in any of said institutions" (emphasis added), not merely those who actually trade with the Board of Control or its constituents; § 741.1, even as I read it, is appreciably narrower.

I do not hesitate to acknowledge that the reprehensible character of taxpayer's coddling of these public servants moves me to read § 741.1, since its words permit, as extending to the worst of this conduct. If some organ of Iowa law had construed it otherwise,[11] we would, of course, bow. But we have very little but the statute itself to guide us, and so far as its terms allow we should assume that it covers practices as "fraught with temptation" and subversive of public impartiality as many of taxpayer's expenditures. See United States v. Mississippi Valley Generating Co., 364 U.S. 520, 549–550, 81 S.Ct. 294, 5 L.Ed.2d 268 (1961);

Michigan Steel Box Co. v. United States, 49 Ct.Cl. 421, 439 (1914); Eisenberg, Conflicts of Interest Situations and Remedies, 13 Rutgers L.Rev. 666, 669–70 (1959); Association of the Bar of the City of New York, Special Committee on the Federal Conflict of Interest Laws, Conflict of Interest and Federal Service (1960), pp. 19–20. The law does not always take morality into partnership, but neither does it abhor virtue. In this case, Iowa, as I interpret the legislation, lets its law accord with morals rather than with current "business practice."

From the condemnation of § 741.1 I would exclude the Christmas gifts (usually costing less than five dollars); the free lunches, dinners, and cocktail parties; and the free tickets to local events. In the taxable years (1953–1956), our national morals, and presumably Iowa morals as well, did not bar public employees from accepting such minor and relatively inexpensive favors; they were not considered substantial enough to be characterized as a "gift" or "gratuity". But that cannot be said of the sponsored trips to other cities and states for fishing or sports; the golf tournament; and apparently, also, a part of the convention expense. A recipient of such largesse would know, even a decade ago, that he had been given something of real and substantial value.

To the extent indicated, I concur in the result reached by the court, though not in its opinion. Otherwise I dissent.

---

10. One of taxpayer's salesmen justified (in a memo dated November 30, 1953), an expenditure of $364.82 for a trip with public officials to a Notre Dame football game: "Trip to Notre Dame, had two from Cedar Co., two from City of Dubuque, and one from Dubuque County. Think it will pay out OK. Tell better after City deal." On December 14, 1953, taxpayer made a sale to the City of Dubuque, amounting to $11,985.16.

11. In Kirtz v. United States, 157 Ct.Cl. 824, 304 F.2d 460 (1962), the court felt that the Ohio State Insurance Commissioner had in effect determined that the challenged rebates did not violate state law.