UNITED STATES of America, Appellee,

v.

Keith L. ARTHUR, Appellant.

No. 74–2276.

United States Court of Appeals,
Fourth Circuit.

Argued June 11, 1976.

Decided Nov. 4, 1976.

Dennis W. Dohnal, Richmond, Va. (Murray J. Janus, Bremner, Byrne, Baber & Janus, Richmond, Va., R. R. Fredeking, II, Charleston, W. Va., on brief), for appellant.

Frank E. Jolliffe, Asst. U. S. Atty., Charleston, W. Va. (John A. Field, III, U. S. Atty., Charleston, W. Va., on brief), for appellee.

Before CRAVEN and RUSSELL, Circuit Judges, and KUNZIG, Judge, United States Court of Claims.*

DONALD RUSSELL, Circuit Judge:

The appellant Keith L. Arthur was convicted, after a jury trial, on nine counts of an eighteen-count indictment alleging misapplication of bank funds in violation of 18 U.S.C. § 656.[1]  He was sentenced to concurrent terms of imprisonment, the longest being three years, and fined a total of $12,-000.

He appeals, contending that various of the trial court's instructions were erroneous, that the trial court improperly ascertained the nature of the jury's disagreement when it appeared to be deadlocked,

---

* Sitting by designation.

1. Section 656, 18 U.S.C. provides in pertinent part:

> Whoever, being an officer [or] director . . . of . . . any . . . national bank or insured bank  . . ., embezzles, abstracts, purloins or wilfully misapplies any of the moneys, funds or credits of such bank . . . . ·shall be fined not more than $5,000 or imprisoned not more than five years, or both; but if the amount embezzled, abstracted, purloined or misapplied does not exceed $100, he shall be fined not more than $1,000 or imprisoned for not more than one year, or both.

that a subsequent supplemental charge was erroneous in that it repeated some but not all of the original instructions, and that the admission of certain testimony relating to alleged bribery and illegal political contributions by appellant was error.

We reverse and remand for a new trial.

## I

Appellant was the President, a member of the Board of Directors and a major shareholder of the Valley National Bank of Huntington, West Virginia, a federally insured institution. His primary responsibilities as a bank officer were to attract new business and to maintain satisfactory public relations.

The government's evidence established that on eighteen occasions during the period from October, 1970, through September, 1973, appellant received funds from an account which apparently contained the bank's profit from the sale of credit life insurance in connection with its loan operations.[2] Each of these occasions formed the basis of one count of the indictment. Appellant testified that he used the money so obtained to entertain, do favors and buy gifts for state and party officials who might be influential in securing government deposits for the bank.[3]

The government's position is that appellant's testimony, if believed, discloses the use of bank funds to pay unlawful bribes and to make illegal political contributions[4] and that such use constituted a misapplication of those funds in violation of 18 U.S.C. § 656.[5] Appellant, on the other hand, contends that he used the funds only for legitimate business expenditures for the purpose of creating and maintaining goodwill toward the bank among potential customers and persons who might be influential with potential customers.

## II

After instructing the jury that paying bribes and making illegal political contributions with bank money constitute a misapplication of that money, the district court instructed that

> the payment of money to government officials for the purpose of obtaining deposits of government funds in the bank and to influence the judgment of such officials in connection with such deposits is, in itself, illegal in that such activity constitutes the bribery or attempted bribery of public officials.[6]

2. The government's evidence tended to show a total amount withdrawn of $2,810, but appellant admitted receiving only $2,110. The difference is the result of a disagreement as to the amount received by appellant on October 4, 1972. Appellant was acquitted on the count pertaining to that withdrawal.

3. For example, appellant testified that on various occasions he used $120 to buy postage stamps for West Virginia Assistant State Treasurer Joseph RyKoskey who had some control over the deposit of state funds in local banks, $50 to buy cards for a member of the State House of Delegates who, appellant hoped, might be helpful in obtaining certain state accounts for the bank, $25 to pay the expenses of a golf outing with RyKoskey (including reimbursing RyKoskey for his travel expenses), $150 to buy Jackson Day Dinner tickets from RyKoskey, $100 to join Republican Century Club, $10 to purchase Heart Association raffle tickets from RyKoskey, $400 as a contribution to State Treasurer Kelly, $50 to give, as a contribution to the Republican Party, to the state National Committeewoman who was helping to secure a post office account for the bank, $100 to buy Inaugural Gala tickets from the State Road Engineer who was helpful with respect to the "bridge account," and $40 to purchase tickets to the Inaugural Ball for RyKoskey. Appellant testified to numerous other expenditures which were substantially similar in nature to those set forth.

4. See 18 U.S.C. § 610:

> It is unlawful for any national bank . . . to make a contribution or expenditure in connection with any election to any political office, or in connection with any primary election or political convention or caucus held to select candidates for any political office . . . . .

5. Insofar as the record shows, however, the government has never sought to indict appellant for bribery or of making illegal political contributions.

6. A similar definition of bribery was given at the beginning of the court's instructions.

The use of bank funds for the illegal purposes of bribing state officials or making unlawful political contributions constitutes a misapplication of those funds within the meaning of 18 U.S.C. § 656 regardless of any anticipated benefit to the bank, *United States v. Caldwell*, (4th Cir. 1976) 544 F.2d 691. There was evidence at trial from which a jury, if properly instructed, might have found that appellant had used bank funds for such purposes. Therefore, contrary to appellant's contention, it was proper to instruct the jury as to bribery and illegal contributions. However, the district court's instruction on bribery, as set forth above, was erroneous in that if failed to adequately distinguish conduct which amounts to bribery from conduct which is legally innocent. *Cf., United States v. Brewster* (1974) 165 U.S.App.D.C. 1, 506 F.2d 62, 78–79, 83.

■■■ Not every gift, favor or contribution to a government or political official constitutes bribery. It is universally recognized that bribery occurs only if the gift is coupled with a particular criminal intent, *e. g. United States v. Brewster, supra; Neely v. United States* (9th Cir. 1960) 274 F.2d 389; *United States v. Labovitz* (3rd Cir. 1958) 251 F.2d 393; *State v. Brewer*, 258 N.C. 533, 129 S.E.2d 262, *appeal dismissed*, 375 U.S. 9, 84 S.Ct. 72, 11 L.Ed.2d 40 (1963); *People v. Lyons*, 4 Ill.2d 396, 122 N.E.2d 809 (1954); *People v. Johnston*, 328 Mich. 213, 43 N.W.2d 334 (1950). That intent is not supplied merely by the fact that the gift was motivated by some generalized hope or expectation of ultimate benefit on the part of the donor, *see United States v. Brewster, supra* (dealing with campaign contributions) and *Dukehart-Hughes Tractor & Equipment Co. v. United States* (1965) 341 F.2d 613, 169 Ct.Cl. 522 (tax case holding, *inter alia*, that "goodwill" gifts and favors to government officials did not contravene Iowa bribery statute). "Bribery" imports the notion of some more or less specific *quid pro quo* for which the gift or contribution is offered or accepted. *See, e. g., United States v. Brewster, supra*, at 81:

No politician who knows the identity and business interests of his campaign contributors is ever completely devoid of knowledge as to the inspiration behind the donation. There must be more specific knowledge of a definite official act for which the contributor intends to compensate before an official's action crosses the line between guilt and innocence.

■■■ This requirement of criminal intent would, of course, be satisfied if the jury were to find a "course of conduct of favors and gifts flowing" to a public official *in exchange for* a pattern of official actions favorable to the donor even though no particular gift or favor is directly connected to any particular official act. *United States v. Baggett* (4th Cir. 1973) 481 F.2d 114, *cert. denied* 414 U.S. 1116, 94 S.Ct. 850, 38 L.Ed.2d 744 (1973) (Travel Act [7] prosecution involving alleged bribery of Maryland County Commissioner). Moreover, as the Seventh Circuit has held, it is sufficient that the gift is made on the condition "that the offeree act favorably to the offeror when necessary." *United States v. Isaacs* (7th Cir. 1974) 493 F.2d 1124, 1145, *cert. denied* 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974) (construing Illinois statute in a Travel Act prosecution). It does not follow, however, that the traditional business practice of promoting a favorable business climate by entertaining and doing favors for potential customers becomes bribery merely because the potential customer is the government. Such expenditures, although inspired by the hope of greater government business, are not intended as a *quid pro quo* for that business: they are in no way conditioned upon the performance of an official act or pattern of acts or upon the recipient's express or implied agreement to act favorably to the donor when necessary. *See Dukehart-Hughes Tractor & Equipment Co. v. Hughes, supra*, at 615–616.

■■■ As the alleged bribees in this case were West Virginia government and party officials, the most relevant definition

---

7. 18 U.S.C. § 201.

of bribery is that of West Va. Code Ann. § 61–5A–3 (Supp.1975) which, reduced to essentials, provides that bribery is the payment or acceptance of "[a]ny pecuniary benefit *as consideration for* the recipient's official action as a public servant or party official . . ." (Emphasis added). While the West Virginia courts do not appear to have considered the point, it is reasonably certain that this statute was not intended to depart from the general rule as to the requisite criminal intent discussed above. Indeed, the use of the contractual term "consideration" indicates that the benefit must be given in exchange or as compensation for official action—and not merely as an unconditional gift with the hope that a favorable business climate will result—in order to be classified as bribery.[8]

The crucial distinction between "goodwill" expenditures and bribery is, then, the existence or nonexistence of criminal intent that the benefit be received by the official as a *quid pro quo* for some official act, pattern of acts, or agreement to act favorably to the donor when necessary. In instructing on bribery, the District Court in this case was obliged to set forth that distinction with sufficient clarity to enable the jury to determine the legality of appellant's expenditures, *United States v. Brewster, supra,* at 83. This was not accomplished by the instruction that "payment of money to Government officials for the purpose of obtaining deposits of government funds in the bank and to influence the judgment of such officials in connection with such deposits . . . constitutes . . . bribery . . . ." If "influence" is given its broadest common meaning, it is clear that "goodwill" gifts and favors to and entertainment of government officials are intended to influence the judgment of such officials. That is, such expenditures are made with the hope that the officials will be more likely to award government business to the donor if a favorable business climate is created than if such a climate is not established. But, as is apparent from the discussion above, this type of influence does not amount to bribery.

This defect was not cured by the Court's subsequent instruction that the Internal Revenue Code "recognizes that a business such as a bank may incur legitimate business expenditures for ordinary and necessary business purposes to create a favorable business climate and to promote its relationship with present and potential customers." Even if the jury understood this to mean that "goodwill" expenditures are not bribery, the instruction did not explain how to differentiate such expenditures from those which do constitute bribery.[9] Moreover, when the jury subsequent-

---

8. The conclusion that West Virginia does not consider "goodwill" expenditures to constitute bribery is bolstered by the fact that West Va. Code Ann. § 61–5A–6 (Supp.1975), which prohibits certain gifts and gratuities to public servants excludes from its coverage "trivial gifts or gratuities" and "social, professional or business entertainment involving no substantial risk of affecting official impartiality." (Certain campaign contributions are also excepted.) Sections 61–5A–3 and 61–5A–6 were both enacted as part of the West Virginia Bribery and Corrupt Practices Act and should, therefore, be construed in *pari materia.* Consequently, the exemption of goodwill expenditures from the provisions of Section 61–5A–6, under which a lesser standard of criminal intent is applicable, *cf. United States v. Brewster* (1974), 165 U.S. App.D.C. 1, 506 F.2d 62 (construing federal bribery and illegal gratuities provisions), is persuasive evidence that the West Virginia legislature regarded such expenditures as legitimate business practice and did not intend to prohibit them under Section 61–5A–3.

9. The resultant ambiguity may explain one somewhat puzzling aspect of the jury's verdict. Despite substantial similarity in appellant's testimony with respect to his use of the funds to which Counts Two and Seven pertain (on each occasion he bought tickets to Democratic Party dinners from RyKoskey), he was acquitted on Count Two and convicted on Count Seven. A compromise resulting from jury uncertainty as to the exact line of demarcation between bribery and lawful goodwill expenditures is at least one possible explanation for this apparent inconsistency. "A defendant is entitled to more than a possible jury room compromise, he is entitled to have his guilt or innocence voted up or down on the clearest possible lines of distinction." *United States v. Brewster* (1974) 165 U.S.App.D.C. 1, 506 F.2d 62, 83.

ly requested supplemental instructions, the Court repeated its instruction on bribery but not the one on legitimate business expenditures—thereby diluting or destroying any remedial effect which the latter might have had.

■ The determination of whether appellant used bank money to bribe state and party officials was, in this case, a crucial step in ascertaining whether he was guilty of misapplying that money within the meaning of 18 U.S.C. § 656. Consequently, the vagueness in the District Court's instructions with respect to the distinction between bribery and legitimate goodwill expenditures rendered them fatally defective and a new trial is, therefore, warranted.[10]

### III

When the jury, unable to reach a verdict, requested supplemental instructions, the District Court instructed, *inter alia*, that

the term "injure" as used in this statute . . . is to be used in its ordinary and normal sense. It means to do injustice to; to harm, impair and tarnish the standing of. It is any wrong and damage done to another, either in his person, rights, reputation or property.

Appellant contends that this instruction was erroneous and we agree.

■ In defining a term such as "injure" where such term is within the contemplation of a statute, courts should generally look to the purpose underlying the statute in ascertaining the meaning of such term.[11] The purpose of 18 U.S.C. § 656 being to protect the assets of the Federal Deposit Insurance Corporation and of banks

having a federal relationship, *see United States v. Wilson* (5th Cir. 1974) 500 F.2d 715, *cert. denied* 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975); *Garrett v. United States* (5th Cir. 1968) 396 F.2d 489, *cert. denied* 393 U.S. 952, 89 S.Ct. 374, 21 L.Ed.2d 364 (1968) and *Weir v. United States* (7th Cir. 1937) 92 F.2d 634, *cert. denied* 302 U.S. 761, 58 S.Ct. 368, 82 L.Ed. 590 (1937), we conclude that the term "injure" as contemplated by that statute was intended to include only pecuniary loss. While damage to a bank's reputation may eventually result in some deterioration in the bank's financial condition, such loss would be too indirect and speculative and we decline to construe the statute as comprehending it. Consequently, insofar as the District Court's instructions defined "injure" as meaning anything other than to cause pecuniary loss to the bank, they were erroneous.

### IV

■ An essential element of the offense of misapplication of bank funds under 18 U.S.C. § 656 is intent to injure or defraud the bank, *e. g., United States v. Topkoph* (10th Cir. 1975) 514 F.2d 597, 603; *United States v. Giordano* (2d Cir. 1973) 489 F.2d 327, 330, and *United States v. Schmidt* (3d Cir. 1972) 471 F.2d 385, 386. In this case the District Court informed the jury of this requirement and then instructed that

intent to injure or defraud the bank exists if you find that the defendant acted knowingly and that the natural result of his actions were [sic] to injure or defraud the bank, even though this may not have been his motive.

---

**10.** It should, perhaps, be noted that while the facts in *United States v. Caldwell, supra,* were in some ways similar to those in this case, the two cases differ in significant respects. First, the issue in *Caldwell* was not the adequacy of the trial court's instructions but the legal sufficiency of the indictment and of the evidence, *id.,* at 733. Moreover, in contrast to the situation here, in *Caldwell* the recipients of the alleged bribes testified and admitted that they favored Caldwell's bank as consideration for the gifts and payments made to them, *id.,* at 733 and 735.

**11.** Strictly speaking, the term "injure" no longer actually appears in the statute, having been omitted in the 1948 revision. However, it has been consistently held that the revision was not intended to effect any substantive change and intent to injure the bank remains an essential element of the offense, *see, e. g., United States v. Schmidt* (3d Cir. 1972) 471 F.2d 385, 386; *Golden v. United States* (1st Cir. 1963) 318 F.2d 357, 361, and *Seals v. United States* (8th Cir. 1955) 221 F.2d 243, 245.

Appellant did not specifically object to this instruction at trial but now contends that it constituted plain error. As we are remanding for other errors in the instructions,[12] it is not necessary to decide whether this instruction was "plain" error. But we do agree with appellant that the instruction was erroneous and we set forth our views for the District Court's guidance on retrial.

An instruction that it is reasonable to *infer* that a person ordinarily intends the natural and probable consequences of his voluntary acts has generally been held proper, *see, e. g., United States v. Trexler* (5th Cir. 1973) 474 F.2d 369, *cert. denied* 412 U.S. 929, 93 S.Ct. 2759, 37 L.Ed.2d 157 (1973); and *United States v. Wilkinson* (5th Cir. 1972) 460 F.2d 725. As the Court said in *Wilkinson*:

> It is reasonable to infer that a person ordinarily intends the natural and probable consequences of his knowing acts. The jury may draw the inference that the accused intended all of the consequences which one standing in like circumstances and possessing like knowledge should reasonably have expected to result from any intentional act or conscious omission. Any such inference drawn is entitled to be considered by the jury in determining whether or not the government has proved beyond a reasonable doubt that the defendant possessed the required criminal intent. (p. 733)

The instruction as given here, however, went beyond this and created a finding of intent based upon the inferences stated. This was improper.[13]

We conclude, therefore, that the challenged instruction was erroneous in that it directed, rather than permitted, the finding of the fact of intent "as the natural result of his actions." As a practical matter, it may be improbable that appellant would have been able to dissuade the jury from drawing the permissible inference; but he was entitled to an opportunity to try. The District Court's instruction deprived him of that opportunity.

## CONCLUSION

Because the trial court's charge with respect to the distinction between bribery and lawful goodwill expenditures was inadequate and because its instructions on the meaning of "injure" and "intent to injure or defraud" were incorrect, this case must be remanded for a new trial. In view of our holding with respect to the trial court's instructions, we need not and do not reach appellant's other assignments of error.

REVERSED AND REMANDED.

---

12. *See* Parts II and III, *supra.*

13. In *Benchwick v. United States* (9th Cir. 1961) 297 F.2d 330, 333, n. 5, the Court said: [Specific intent] may not be supplied by a conclusive presumption from given facts, since that would, in effect, eliminate the requirement of specific intent from the statute. * * * [Therefore] defendant's intent to injure and defraud the bank could be inferred as a matter of law from any particular circumstance, even the long-continued practice of drawing checks on insufficient funds.

The issue before the court in *Benchwick* was the sufficiency of the evidence and not the propriety of the charge. The rationale of the quoted passage is, however, instructive as to the propriety of an instruction creating a conclusive presumption.