UNITED STATES of America,
Plaintiff-Appellee,

v.

Gerald JOHNSON, Roy Cooper, and Ed
Riley, Defendants-Appellants.

Nos. 78–2038, 78–2039 and 78–2040.

United States Court of Appeals,
Tenth Circuit.

Argued Jan. 25, 1980.

Decided May 16, 1980.

Rehearing Denied in No. 79–2039
June 17, 1980.

William R. Burkett, Oklahoma City, Okl. (G. Phil Harney and William J. Skepnek, Oklahoma City, Okl., with him on brief), of Linn, Helms, Kirk & Burkett, for defendants-appellants Johnson and Riley.

Dolorin Carl Thomas, Oklahoma City, Okl. (James W. Patterson, Oklahoma City, Okl., with him on brief), for defendant-appellant Cooper.

William S. Price, Asst. U. S. Atty., Oklahoma City, Okl. (Larry D. Patton, U. S. Atty. for the Western District of Oklahoma, Oklahoma City, Okl., with him on brief), for plaintiff-appellee.

Before SETH, Chief Judge, and McKAY and SEYMOUR, Circuit Judges.

McKAY, Circuit Judge.

In an eight-count indictment returned on August 2, 1978, in the Western District of Oklahoma, Gerald Johnson, Roy Cooper and Ed Riley were charged with various acts of conspiracy, bribery and fraud. Each defendant was acquitted on the conspiracy charge. In addition, appellant Johnson was acquitted on charges of bribery of a public official and obstruction of justice. Appellants Johnson and Riley were convicted of mail fraud and wire fraud, in violation of 18 U.S.C. §§ 1341, 1343. Appellant Cooper was convicted of bribing a public official in violation of 18 U.S.C. § 201(b)(1). A fourth defendant was charged with conspiracy and receiving a bribe but was acquitted on both charges.

Appellant Johnson owned a majority interest in two Oklahoma corporations (aircraft companies) involved in leasing, buying and rebuilding aircraft. Appellants Cooper and Riley were employed by these aircraft companies. The bribery count on which Cooper was convicted arose from a $10,000 check given indirectly by Cooper to a procurement agent for the Federal Aviation Administration in Oklahoma.

The mail and wire fraud charges on which Johnson and Riley were convicted stem from an agreement negotiated by Johnson and Riley with a California company. The California company agreed, for $5,000, to drop out of certain contracts previously awarded to it, thus allowing the contracts to be awarded to Johnson's companies. The fraudulent scheme was negotiated over the telephone and confirmed by mailgram. In addition, the mail was used to exchange the $5,000 check and a false invoice from the California company purporting to represent a sale of miscellaneous aircraft parts.

The prosecution presented sixteen witnesses and numerous exhibits. One of the primary witnesses, Fowler, had been a bookkeeper for the aircraft companies. She testified to various conversations and acts implicating the defendants in many of the offenses charged. She was examined by the prosecution and thoroughly cross-examined by each of the four defendants. After the prosecution had rested, the defendants called more than twenty witnesses. The final defense witness, Miller, had been a secretary for the aircraft companies. Miller admitted on the stand that she and Fowler had embezzled a substantial amount of money from the aircraft companies during the course of their employment. The defendants learned of this embezzlement the day before Miller took the stand, long after the examination of Fowler was completed.

The defendants attempted to call Fowler back to the stand before questioning Miller. Because Fowler was not in the courtroom, however, they called Miller first. Soon thereafter, Fowler entered the courtroom but, shortly after Miller's testimony was completed, Fowler fainted. She was eventually taken to a hospital and became unavailable as a witness.

The government requested a continuance of the trial in order to allow time for Fowler to recover. A short continuance was granted. However, in the face of opposi-

tion to any further continuance by each of the defense attorneys and in light of representations that Fowler would be unavailable for an unascertainable period of time, the court denied the government's motion for a further continuance.

Each of the appellants now asks for a reversal and a new trial. Appellants claim that Fowler's testimony was shown by Miller to have been perjured, and that their convictions cannot be allowed to stand on this "tainted" testimony. They insist upon the right to a thorough "cross-examination" of Fowler in light of the evidence presented by Miller. In addition, appellant Cooper maintains that the evidence at trial was insufficient to support his conviction on the bribery count.

## I.

■ We do not agree that the unavailability of Fowler as a witness, even in light of the dramatic revelations made by Miller at the end of the trial, deprived appellants of a fair trial.

The appellants were not denied the opportunity to cross-examine any government witness. Counsel for each of the defendants conducted a vigorous cross-examination of Fowler. Thus, the constitutional right to cross-examine witnesses discussed in such cases as *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), is not implicated.

Appellants' claim of prejudice rests on the assumption that the testimony given by Fowler was perjured. However, we cannot assume, on the basis of Miller's testimony alone, that Fowler's testimony was knowingly false. The fact that Fowler was, or may have been, embezzling money from her employers does not necessarily make her testimony against them perjured. Although Miller perhaps contradicted Fowler on some factual issues, we have no sound basis for determining which, if either, of the parties perjured herself. Furthermore, even if we were to accept the proposition that Fowler committed perjury in some portions of her testimony, a new trial is not mandated.

The appellants list four general areas or statements which they claim have been demonstrated by Miller to be perjured.[1] This testimony related only peripherally, if at all, to substantive issues involved in the offenses for which appellants were convicted. Claims of prejudice by Johnson and Riley are further weakened by the fact that Fowler's testimony had very little relevance to the only counts on which they were convicted—wire and mail fraud. Her testimony dealt primarily with the conspiracy charges, on which all defendants were acquitted, and the bribery charges.

Miller was not employed by the aircraft companies at the times most relevant to these convictions. Miller admitted that she had no direct knowledge of the events that form the basis of the convictions and that she did not know if Fowler's allegations were true or false. Accordingly, Miller's testimony had little direct bearing on any relevant testimony given by Fowler. Miller did not directly impeach Fowler on any substantive issues. Miller's testimony is relevant only on the credibility of Fowler as a witness.

The intent and effect of Miller's testimony was simply to call into question certain parts of Fowler's testimony and to impeach Fowler's credibility. The conflicts and issues thus raised were presented to and resolved by the jury. The facts of this case do not approach the stark circumstances of *Mesarosh v. United States*, 352 U.S. 1, 77 S.Ct. 1, 1 L.Ed.2d 1 (1956). There the government after trial questioned the truthfulness and credibility of its own witness because of obviously false testimony given on other occasions.

---

1. Appellants claim that Miller's testimony indicates that Fowler committed perjury on one or more of the following issues: (1) the amount of compensation earned by Fowler while employed by the aircraft corporations; (2) Fowler's conduct in the maintenance of records of the aircraft corporations; (3) an alleged trip made by appellants and checks written for expenses on that trip; and (4) Fowler's ill will toward the appellants.

The fact that Fowler became unavailable as a further witness does not add sufficient weight to compel reversal. The purpose for desiring to recall Fowler was to present her with the allegations of Miller and to try further to impeach the original testimony. Even if this would be a proper method of impeaching Fowler, appellants' inability to do so under these circumstances did not deprive them of a fair trial. Fowler's testimony could be, and was, adequately impeached by other means.

## II.

Appellant Cooper also challenges the sufficiency of the evidence to support his conviction for bribery. Specifically, Cooper claims that there is no evidence of criminal intent. He argues that the government did not prove that the alleged recipient of the bribe knew of the money prior to the initiation of the government's investigation, and that the government failed to establish a *quid pro quo* for the alleged bribe.

The statute under which Cooper was convicted applies to anyone who "directly or indirectly, corruptly gives, offers or promises anything of value to any public official . . . with intent . . . to influence any official act." 18 U.S.C. § 201(b)(1).

In *United States v. Strand*, 574 F.2d 993 (9th Cir. 1978), the Ninth Circuit expounded on the element of criminal intent necessary to convict for accepting a bribe in violation of 18 U.S.C. § 201(c)(3):

> To be guilty under § 201(c)(3), Strand must have "corruptly" accepted the $800 from the Customs agent for himself or some other person in return for knowingly violating his official duty. The requisite "corrupt" intent has been defined as "incorporating a concept of the bribe being the prime mover or producer of the official act." *United States v. Brewster*, 165 U.S.App.D.C. 1, 21, 506 F.2d 62, 82 (1974). It is this element of *quid pro quo* that distinguishes the heightened criminal intent requisite under the bribery sections of the statute [§ 201(b), (c), (d)] from the simple mens rea required for

violation of the gratuity sections [§ 201(f), (g)]. *See id.*, 165 U.S.App.D.C. at 11, 506 F.2d at 72; *United States v. Alessio*, 528 F.2d 1079, 1082 (9th Cir.), *cert. denied*, 426 U.S. 948, 96 S.Ct. 3167, 49 L.Ed.2d 1184 (1976).

574 F.2d at 995 (footnote omitted). *See also United States v. Arthur*, 544 F.2d 730, 735 (4th Cir. 1976).

■ To establish the crime of offering a bribe under § 201(b)(1), the government must show that the money was knowingly offered to an official with the intent and expectation that, in exchange for the money, some act of a public official would be influenced. The money must be given with more than "some generalized hope or expectation of ultimate benefit on the part of the donor." *United States v. Arthur*, 544 F.2d at 734. The money must be offered, in other words, with the intent and design to influence official action in exchange for the donation.

■ Contrary to the arguments of Cooper, however, it need not be shown that the public official to whom the bribe was offered was actually corrupted by the offer. It is not necessary to show that the official accepted the bribe, and the object of the bribe need not even be attainable to support a conviction for offering the bribe under § 201(b). *United States v. Jacobs*, 431 F.2d 754, 759–60 (2d Cir. 1970). In fact, so long as the money is offered with corrupt intent, the official does not necessarily even need to be aware of the bribe. "The statute makes *attempted* bribery a crime, and so long as a bribe is 'offered or promised' with the requisite intent 'to influence *any* official act' the crime is committed." *Id.* at 760 (emphasis in original).

■ We find that the evidence was sufficient to support Cooper's conviction for bribery. The government presented the testimony of two witnesses who overheard conversations involving Cooper which indicated that the $10,000 check was given in expectation of favors or payoffs from the government procurement agent. Furthermore, the $10,000 payment was originally

entered on the company records as an investment on contracts they hoped to win. After a grand jury investigation had begun, the records were altered to show the $10,-000 as a draw against commissions owed Cooper. The government also introduced circumstantial evidence which tended to support its position.

Although Cooper introduced evidence in support of his claim that the $10,000 was given as a personal loan and not a bribe, the jury obviously disbelieved it. When considered in a light most favorable to the government, the evidence is sufficient to support a jury verdict that the money was offered by Cooper with the corrupt intent to influence official action.

AFFIRMED.