**UNITED STATES of America**

v.

**Daniel B. BREWSTER, Appellant.**

No. 73–1305.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 5, 1974.

Decided Aug. 2, 1974.

Edward Bennett Williams, Washington, D.C., with whom Earl C. Dudley, Jr., Washington, D.C., was on the brief, for appellant.

Stuart M. Gerson, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., at the time the brief was filed and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee. Earl J. Silbert, U. S. Atty. and James E. Sharp,

Asst. U. S. Atty. at the time the record was filed, also entered appearances for appellee.

Before TAMM, ROBINSON and WILKEY, Circuit Judges.

WILKEY, Circuit Judge:

This appeal arises from conviction of defendant Brewster on three counts of an indictment charging violations of 18 U.S.C. § 201(c)(1), Bribery of Public Officials and Witnesses. The jury convicted, not on the bribery section 201(c)(1), but on the illegal gratuity section 201(g), defined by the trial judge's instructions as a lesser included offense.

■ Defendant Brewster urges three principal points:

(1) Section 201(g) was erroneously designated and charged as a lesser included offense under section 201(c)(1).

(2) Section 201(g) is unconstitutionally vague and overbroad.

(3) The trial judge failed in his charge to the jury to distinguish between legal and illegal political contributions sufficiently to enable the jury to determine guilt or innocence.[1]

We find that on the facts of this case a conviction under the gratuity section 201(g) as a lesser included offense within the bribery section 201(c)(1)[2] could be sustained. We do not find 18 U.S.C. § 201(g)[3] unconstitutionally vague or overbroad as applied to elected public officeholders. We do find, however, that the trial judge failed in his conscientious effort to set forth a clear and comprehensible standard for the jury to make the difficult tripartite distinction among receiving bribery payments within section (c)(1), receiving illegal gratuities within section (g), and receiving legal normal campaign contributions. We therefore reverse and remand for a new trial, at which the task of the trial judge will be somewhat lighter, as he will now need only to distinguish between accepting illegal gratuities under section 201(g) and receiving legal campaign contributions.

## I. THE FACTS AS CHARGED AND AS PROVED

The defendant Daniel B. Brewster, former United States Senator from Maryland, was originally indicted along with Cyrus T. Anderson and Spiegel, Inc., in a 10-count indictment. Five of the counts related to Brewster's accepting alleged bribes and gratuities as defined by 18 U.S.C. §§ 201(c)(1) and (g), while five counts charged defend-

---

1. The defendant also alleges error in the court's refusal, after *in camera* inspection, to allow defense access to tapes of telephone surveillance. The judge found the conversations were brief and involved routine matters not remotely connected with this case. Under our recent decision in United States v. Lemonakis, 158 U.S.App.D.C. 162, 485 F.2d 941 (1973), the action of the District Judge in refusing disclosure of the tapes was proper, is upheld, and we need say nothing further concerning it herein.

2. Section 201(c)(1) provides in pertinent part:

Whoever, being a public official or person selected to be a public official, directly or indirectly, corruptly asks, demands, exacts, solicits, seeks, accepts, receives, or agrees to receive anything of value for himself or for any other person or entity, in return for:

 * * * * *

(1) being influenced in his performance of any official act;

 * * * * *

Shall be fined not more than $20,000 or three times the monetary equivalent of the thing of value, whichever is greater, or imprisoned for not more than fifteen years, or both, and may be disqualified from holding any office of honor, trust, or profit under the United States.

3. Section 201(g) provides as follows:

Whoever, being a public official, former public official, or person selected to be a public official, otherwise than as provided by law for the proper discharge of official duty, directly or indirectly asks, demands, exacts, solicits, seeks, accepts, receives, or agrees to receive anything of value for himself for or because of any official act performed or to be performed by him . . . .

Shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

ants Anderson and Spiegel, Inc., with the reciprocal payment of the bribes and gratuities under sections 201(b) and (f).[4] Two of the counts against Brewster were dismissed, leaving Counts 3 and 5 (originally Counts 5 and 7), which charged that while he was a Senator, Brewster had on 27 April and 19 July of 1967

> directly and indirectly, corruptly asked, solicited, sought, accepted, received and agreed to receive the sum [s of $4,500 and $5,000 respectively] for himself and for an entity, that is, the "D.C. Committee for Maryland Education," from Cyrus T. Anderson and Spiegel, Inc. in return for being influenced in his performance of official acts in respect to his action, vote, and decision on postage rate legislation which might at any time be pending before him in his official capacity and in his place of trust and profit; in violation of Sections 201(c)(1) and (2), Title 18, United States Code.[5]

Count 1 similarly charged Brewster with receiving in January 1967 a $5,000 bribe for himself alone.

Brewster was a member of the Senate Committee on Post Office and Civil Service.[6] At the time the first sum of money was allegedly illegally received by Senator Brewster, no postal rate legislation was pending in the Senate, but there had been publicly proposed by the Postmaster General a postal rate increase, which legislation was introduced on 5 April 1967.

Brewster's connection with Anderson and Spiegel, Inc., in these matters originated in late 1965, when a political fund-raiser suggested to the Senator and his Administrative Assistant Sullivan that money for the Senator's re-election campaign could be available through Cyrus Anderson. Since Brewster was not yet an announced candidate for re-election in Maryland, his visitor recommended that he set up a committee in the District of Columbia to receive unreported contributions.

This initial contact with Brewster was followed up by a phone call from Anderson to Sullivan in January 1966, in which both the postal rate increase proposal and Anderson "sending something" to the office were discussed. Shortly thereafter a $5,000 check from the Hotel and Restaurant Employees and Bartenders International Union, made payable to the "D.C. Committee for Maryland Education," arrived in Senator Brewster's office.[7] At the time the check was re-

4. On 9 October 1970 District Judge Hart granted defendant Brewster's motion to dismiss the indictment as to himself, on the ground that the Speech or Debate Clause of the Constitution, Art. I, § 6, prevented his prosecution for the acts charged. The Supreme Court reversed the dismissal, holding that a member of Congress may be prosecuted under a criminal statute provided that the Government's case does not rely on legislative acts or the motivation for legislative acts. United States v. Brewster, 408 U.S. 501, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972).

On remand, the District Judge dismissed Count 9 of the original indictment on the ground that it related explicitly to payment for acts already performed, and thus the Government could not prove its case without proving the performance of legislative acts. Since it related to acts already performed, the original Count 9 charged a violation of the gratuity section 201(g), not of the bribery section 201(c)(1).

The original Counts 1 and 2 of the indictment were dismissed by the court at the con-

clusion of the Government's case for insufficient evidence, and the remaining Counts, 3 through 8, were renumbered as Counts 1 through 6.

On 2 November 1972, defendant Spiegel, Inc. was severed, after it agreed to plead guilty to two unlawful payments of gratuities in violation of 18 U.S.C. § 201(f), as a lesser included offense of two counts charging bribery. The corporation was fined $10,000 on each count.

5. Joint App. at 28, 29.

6. Since no claim of insufficiency of evidence to sustain the verdict is involved on this appeal, we have not set out many details of the testimony which were appropriate for the jury to consider, particularly on the issue of intent.

7. This was made the subject of an original Count 1 in the indictment, dismissed for insufficiency of evidence because the check had no connection with Spiegel, Inc. ·

ceived, the D.C. Committee did not yet exist, but shortly thereafter it was directed to be organized by Brewster. Sullivan became president, and a Brewster supporter not affiliated with the Senator's office was selected as treasurer; a bank account was opened in which the $5,000 check was deposited.

The events which became the subject matter of the three counts on which defendant Brewster was ultimately convicted began in January 1967. Anderson met with Brewster and Sullivan in the Senator's office, at which time Anderson explained his representation of Spiegel, Inc., its opposition to higher postal rates, and its interest in seeing the proposed increase defeated when introduced. After laying out his and Spiegel, Inc.'s interest in these legislative matters, Anderson gave Brewster an envelope containing $5,000 in cash, which the Senator handed over to Sullivan. The $5,000 in cash was placed in a safe in Sullivan's office next door to the Senator's, and the funds were later used to meet miscellaneous expenditures which defendant Brewster wanted paid in cash.[8]

The anticipated postal rate increase legislation was introduced on 5 April 1967. On or about 27 April 1967 Anderson, accompanied by a man introduced as Morris Spiegel, saw defendant Brewster and Sullivan in the Senator's office. After discussion of the postal rate legislation and the tactics to defeat the rate increase as applied to Spiegel's mail-order catalogue business, the purported Mr. Spiegel handed an envelope containing $4,500 in cash to defendant Brewster, who later instructed Sullivan to have the funds deposited in the D.C. Committee account. On 28 April, the day after the deposit, Brewster requested $3,000 in cash, and Sullivan drew a check on the D.C. Committee account

and gave the $3,000 to Brewster, who deposited it in his personal account.[9]

On 19 July 1967 Anderson gave Sullivan his personal check for $5,000, with the payee line blank. Sullivan wrote in the name of the D.C. Committee. The evidence showed that Anderson made this personal check because, while Sullivan at defendant Brewster's direction had been entreating Anderson for further funds from Spiegel, Inc., no Spiegel check had yet arrived in Brewster's office. Immediately following the 20 July deposit of the $5,000 Anderson check, at Brewster's direction four checks totalling $5,000 were drawn on the D.C. Committee account, and defendant Brewster received $3,000 of the proceeds. Another $1,000 was sent at Brewster's direction to a Maryland candidate.[10]

Brewster's own testimony showed that the D.C. Committee for Maryland Education had not been set up for educational purposes, but rather as a conduit for political contributions. A considerable volume of testimony regarding individual checks and transactions in addition to those made the subject of the various counts of the indictment showed that the D.C. Committee account was used to make campaign contributions for Brewster, to make reimbursements and advances to staff members, to pay for public opinion polls, tickets to political dinners, and office supplies. Sullivan prepared most of the checks on the D.C. Committee account, but did so upon defendant Brewster's direction. Testimony also showed that Brewster's personal account was utilized in much the same way to pay for similar items. Brewster himself testified that if the D.C. Committee account had not been utilized to pay the expenses for which it was used, he himself would have been required to do so.

Senator Brewster's defense was that although the payments were made by

---

8. This transaction was made the subject of Count 3 of the original indictment, which later was renumbered as Count 1.

9. This transaction was made the subject of Count 3 (original Count 5).

10. This transaction was made the subject of Count 5 (original Count 7).

Anderson with the intent to influence Senator Brewster's action with respect to the postal legislation, yet Brewster himself did not accept any money in return for being so influenced. This defense was partially successful. While the jury convicted Anderson of the crime of bribery on all three counts as charged, the jury acquitted Senator Brewster on the three bribery counts, but convicted him of the lesser included offense of accepting an illegal gratuity under section 201(g). From the nature of this jury verdict arise the difficult legal problems on this appeal.

## II. THE RELATIONSHIP OF SECTION 201(g) TO SECTION 201(c)(1)

There are two subsections of 18 U.S. C. § 201 involved here. Under section 201(c)(1) defendant Brewster was indicted; under section 201(g) he was convicted. The relationship between the two subsections, identifying the three clauses on which the parties' legal arguments turn, is best set forth graphically.

### Bribery Section (c)(1)

(c) Whoever, being a public official [ ] or person selected to be a public official,

directly or indirectly,

[A] corruptly

asks, demands, exacts, solicits, seeks, accepts, receives, or agrees to receive anything of value for himself

[B] or for any other person or entity,

[C] in return for:

(1) being influenced in his performance of any official act;

### Gratuity Section (g)

(g) Whoever, being a public official, [former public official,] or person selected to be a public official,

[A] otherwise than as provided by law for the proper discharge of official duty,

directly or indirectly

asks, demands, exacts, solicits, seeks, accepts, receives, or agrees to receive anything of value for himself

[C] for or because of any official act performed or to be performed by him;

To anticipate our conclusions a bit, after the above graphical analysis of the statute, one conclusion of which we are certain from the face of this statute is that it is quite a task for the trial judge to explain to the jury the differences between the greater and the lesser offense on which conviction or acquittal turns. However, even if the statute makes no clear distinction between the offenses defined in sections (c) and (g), this is no ground for holding the statute unconstitutional for vagueness or overbreadth, so long as each section defines an offense with sufficient clarity. Or, if it be thought that the statute on its face defines clearly in the abstract two separate offenses in sections (c) and (g), but that on the facts of a particular case there appears no discernible distinction between the two offenses, then again there is no constitutional invalidity. What is essential in a given case is that the trial judge be able to define for the jury with indisputable clarity the line between guilt and innocence, and, if a

verdict under a greater and lesser included offense charge is sought, a second equally bright line between the two possible offenses. It was in attempting to draw both lines that the trial judge here had his difficulties, and we do not think he surmounted them.

## III. THE GRATUITY SECTION 201 (g) AS A LESSER INCLUDED OFFENSE OF THE BRIBERY SECTION 201(c)(1)

### A. *Comparative Analysis of the Statutory Language Differences*

■ In support of his argument that there is no greater and lesser included offense relationship between the statute section on which defendant was indicted and the section on which he was convicted,[11] defendant Brewster points to four differences in language between the bribery section 201(c)(1) and the gratuity section 201(g):

1. The bribery section (c) is broader in that it refers to the receipt of anything of value "for himself *or* for any other person *or* entity," while the gratuity section (g) is limited to the receipt of "anything of value *for himself*." (Comparative Clause B, p. 67 *supra*.)

2. As to the requisite criminal intent, the bribery section (c) calls for the thing of value to be received "corruptly," while the gratuity section (g) merely refers to the acceptance or receipt of a thing of value "otherwise than as provided by law for the proper discharge of official duty." (Comparative Clauses A.)

3. The bribery section (c)(1) prohibits the receipt of anything of value "in return for: (1) being influenced in his

performance of any official act," while the gratuity section (g) prohibits the receipt of anything of value "for or because of any official act performed or to be performed by him." (Comparative Clauses C.)

4. The gratuity section (g), unlike the bribery section (c), applies to past official acts as well as future ones. (Comparative Clauses C.)

Taking these in reverse order, defendant agrees that the fourth difference is irrelevant in the light of the District Judge's dismissal of the only indictment count which related to a past act. As to the second and third (clauses A and C comparatively) defendant states that the offense defined by the gratuity section (g) is necessarily included within the offense defined by the bribery section (c)(1).[12] It therefore follows that these two differences do not preclude a charge based on the gratuity section being a lesser included offense within the bribery section. These two differences in comparative clauses A and C are, however, important later (Part V) in our analysis of the adequacy of the court's instructions.

It is on the difference in clause B, the inclusion in the bribery section of the phrase "or for any other person or entity" with no equivalent in the gratuity section, that the defendant inveighs most heavily. He asserts that "the offense defined by § 201(g) [gratuity] is *narrower* than that defined by § 201(c)(1) [bribery] and thus is by no means necessarily included within a violation of the latter statute."[13] And, "[v]iolation of § 201(g) requires proof beyond a reasonable doubt that the defendant received something of value '*for*

---

11. We find it necessary to treat this question in some detail, even though we find the trial judge was correct on this issue and we reverse and remand for a new trial on another point (faulty instructions). For, had we found that the trial judge erred in considering the gratuity section (g) a lesser included offense within the bribery section (c)(1), then defendant Brewster could not have been properly convicted of violating section 201(g), inasmuch as he was not indicted under section

201(g), nor could be retried. And, defendant Brewster having been acquitted of all charges under section 201(c)(1), no charges for which he could be tried on remand would remain. The determination that section 201(g) is, on the facts of this case, a lesser included offense within section 201(c)(1) is thus essential to our holding here.

12. Appellant's Brief at 12.

13. *Ibid.* (emphasis supplied).

*himself.'* Violation of § 201(c)(1) on the other hand requires proof only that the defendant received something of value 'for himself *or for any other person or entity.*' " [14]

First, as a matter of semantics, without recourse to our analysis in United States v. Whitaker,[15] we would think that if the gratuity offense is *narrower* than the bribery offense (and it is), then the narrower could fit within the greater, *i. e.,* the gratuity offense is a lesser included offense of bribery. However, as defendant Brewster later developed his argument in brief and before the court orally, it appears that what defendant really means is that the bribery charge, being broader, is easier to prove and correspondingly harder to defend against. Therefore, defendant argues, the bribery cannot be a greater offense including the lesser gratuity offense, if the bribery charge is easier to prove and harder to defend.[16] Defendant couples this with a claim that, because the greater bribery charge was the more difficult to defend, he was not called upon to focus on the lesser gratuity charge, as he otherwise might have done successfully since it is easier to defend, and therefore lacked the proper *notice* we have held essential to the prosecution invoking a lesser included offense charge.[17]

Second, directly pertinent to the above and dispositive of defendant's argument quoted at note 14 *supra,* the provision in section 201(c)(1) relating to use of payments received *is* phrased in the *dis*junctive, and defendant's analysis proceeds entirely on the face of the two subsections of section 201. However, defendant's argument fails to consider how the indictment must be drawn to be valid, and how the counts were in fact articulated as to defendant Brewster. These further considerations, to which we now turn, dispose of both the theoretical argument that an offense under the gratuity section cannot be a lesser included offense within the bribery section, and also of the argument that the defendant received no notice of the lesser included offense charge.

## B. *The Three Counts and the Proof in Support*

█ Each of the three counts ultimately considered by the jury charged that Brewster had received money from Anderson *for himself.* Count 1 charged only that Brewster received the money for himself, while Counts 3 and 5 charged in the *con*junctive, that Brewster had received the money "for himself *and* for an entity, that is, the 'D.C. Committee for Maryland Education.' "

It thus is immaterial that the bribery statute, as it naturally would be, is phrased in the disjunctive, *i. e.,* the offense prohibited is the acceptance of the bribe "for himself *or* for any other person or entity"; what is material is that Brewster was charged specifically in Counts 3 and 5 with receiving bribes both for himself and the Committee. Clearly, indisputably, Brewster was on notice to defend a charge that *he himself* received the funds constituting a bribe under each of the three counts.

---

14. Appellant's Reply Brief at 2 (emphasis original).

15. 144 U.S.App.D.C. 344, 447 F.2d 314 (1971).

16. We agree with the defense that normally the greater offense requires more proof, and we think, even on this particular point raised by defendant, that the greater offense did require more proof. The prosecution could not have charged and offered proof in the *alternative* under the language of the statute. So, under Counts 3 and 5, it undertook to show that the funds were received for *both* Brewster and another entity under section 201(c)

(1). To have shown receipt by Brewster alone would have satisfied section 201(g). In another respect here the greater offense did require more proof, *i. e.,* the criminal intent described by "corruptly" under the bribery section, compared to the lesser criminal intent identified in the gratuity section (g).

17. United States v. Whitaker, 144 U.S.App. D.C. at 350, 477 F.2d at 320; Fuller v. United States, 132 U.S.App.D.C. 264, 294, 407 F.2d 1199, 1229 (1967) (*en banc*), cert. denied, 393 U.S. 1120, 89 S.Ct. 999, 22 L.Ed.2d 125 (1969).

That is exactly the notice he would have had, had he been charged under the lesser included offense gratuity section, which is limited to the receipt of "anything of value *for himself*" only. When Brewster made his defense against the charges under the bribery section, under Count 1 he was concerned only with an alleged receipt of payments for himself; under Counts 3 and 5 he was concerned with alleged receipts *both* for himself *and* the Committee; the defense of the greater necessarily embraced the defense of the lesser under Counts 3 and 5.

As to the proof offered, which, under our analysis in *Whitaker* and earlier cases, bears on the propriety of the lesser included offense charge:

Count 1. With respect to this count it is conceded that the evidence was sufficient to support a conviction under § 201(g) [gratuity]. Mr. Sullivan testified that Mr. Anderson delivered $5,000 in cash to the Senator and that the money was put in the office safe. There was no testimony concerning what happened to the money. Senator Brewster and Mr. Anderson denied that any such transaction took place.[18]

Count 3. There was also a fundamental dispute as to the payment involved. Presumably the jury accepted the prosecution's version, *i. e.*, "Mr. Sullivan testified that Mr. Anderson and a man identified as Morris Spiegel, at a meeting with Sullivan and the Senator in the Senator's office, gave the Senator an envelope containing $4,500 in cash, which the Senator then gave to Mr. Sullivan with instructions to deposit it in the Committee's account."[19] Further prosecution testimony showed that the next day a $3,000 check was drawn on the Committee account, the cash given to Brewster, then deposited in Brewster's personal account. The evidence thus supported Count 3 of

the indictment drawn in the conjunctive, *i. e.*, "for himself and for an entity"; it also supported the lesser included offense charge under section 201(g) that defendant Brewster received the money "for himself." As defendant states, "[i]t is at least arguable that upon the Sullivan version of the facts the jury could have found that the payment was made directly to the Senator."[20]

Count 5. A $5,000 check was delivered by Anderson to Sullivan, who then transmitted it to Brewster. Brewster admitted receiving the check. The payee's name had been left blank. Sullivan filled in the Committee's name as payee and deposited the check in the Committee's account. Immediately thereafter four checks payable to cash, totalling $5,000 were drawn. Brewster received $3,000 and sent $1,000 as a personal campaign contribution to a Maryland candidate. As under Count 3, the evidence under Count 5 supports the indictment drawn in the conjunctive, and the lesser included offense that Brewster received the funds "for himself," the latter charge being the one for which he was convicted.

## C. *The Lesser Included Offense Standard of Whitaker Applied*

"Both sides agree that United States v. Whitaker, 144 U.S.App.D.C. 344, 447 F.2d 314 (D.C.Cir. 1971) sets forth the controlling standards for applying the lesser included offense doctrine."[21] For that reason we shall apply, but not repeat *in toto*, the analysis of *Whitaker* to Brewster's case.

In interpreting Fed.R.Crim.P. 31(c), which provides that "[t]he defendant may be found guilty of an offense necessarily included in the offense charged," and our previous decisions relating thereto, we "held that for the defense

---

18. Appellant's Brief at 16.

19. *Id.* at 14.

20. *Id.* at 15. The question of proper instructions differentiating subsections (c)(1) and

(g) is also adverted to at this point in the brief. We reserve discussion of this for Part V.

21. Appellant's Reply Brief at 2–3.

(or prosecution) to be entitled to a lesser included offense charge five conditions must be met. First, . . . a proper request . . . . Second, the elements of the lesser offense must be identical to part of the elements of the greater offense . . . . Third, . . . some evidence which would justify conviction of the lesser offense. Fourth, the proof on the element or elements differentiating the two crimes must be sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser included offense. Fifth, '[i]n general the chargeability of lesser included offenses rests on a principle of mutuality . . . .' "²²

That the first condition has been met here is undisputed. As to the second condition, the language of the two sections of the statute, embracing the elements of the two offenses, has been discussed graphically and in detail under II. and III.A., *supra*, and our discussion demonstrates that the elements of section 201(g) are in part identical to the elements of section 201(c)(1).²³ The third is virtually undisputed, as discussed under III.B., *supra*. The fifth, mutuality, is not in issue, as the right of the defense to such a charge was never asserted and is unchallenged, and the prosecution wisely did not and does not rest its right to a lesser included offense charge on a claim that the defense would have been entitled to the same.

What remains to be analyzed is the fourth, the element differentiating the two crimes of accepting a bribe and accepting a gratuity. As in *Whitaker*, the additional element involves intent; in *Whitaker*, an intent to commit a crime after entry; in Brewster's case, a high-

er degree of criminal intent to constitute accepting a bribe under section (c)(1) than to constitute accepting a gratuity under section (g).

We thus turn to those clauses of the two statutory sections which we have labelled "A" and "C" (see p. 67 *supra*). The requisite intent to constitute accepting a bribe is to accept a thing of value "corruptly" under section (c)(1); the comparable intent under the gratuity section (g) is to accept a thing of value "otherwise than as provided by law for the proper discharge of official duty." On the face of the statute the two comparative clauses are not equivalents. Congress did not use the same language in defining criminal intent for the two offenses. "Corruptly" bespeaks a higher degree of criminal knowledge and purpose than does "otherwise than as provided by law for the proper discharge of official duty." It appears entirely possible that a public official could accept a thing of value "otherwise than as provided by law for the proper discharge of official duty," and at the same time not do it "corruptly." Congress obviously wished to prohibit public officials accepting things of value with either degree of criminal intent; it did so, but it legislated a difference in the requisite criminal intent and correspondingly in the penalties attached.

There is more, on the face of the statute itself, relevant to criminal intent. What we have labelled as comparative clause "C" relates to clause "A" and to criminal intent. To accept a thing of value *"in return for:* (1) *being influenced* in [the] performance of any official act"* (section (c)(1), emphasis supplied) appears to us to imply a higher degree of criminal intent than to accept

---

22. United States v. Whitaker, 144 U.S.App. D.C. at 347, 447 F.2d at 317 (footnotes omitted.)

23. In *Whitaker*, we cited Fuller v. United States, 132 U.S.App.D.C. 264, 407 F.2d 1199 (1967) *(en banc)*, cert. denied, 393 U.S. 1120, 89 S.Ct. 999, 22 L.Ed.2d 125 (1969), as one of a group of opinions "pointing out that in the context of particularized offenses

an exact replica of the lesser included offense need not be contained in the greater." 144 U.S.App.D.C. at 348, 447 F.2d at 318. *See also* United States v. Thornton, 162 U.S. App.D.C. 207, 498 F.2d 749, at 751–752 (1974), wherein we discussed the element of intent required in the lesser included offense of an attempt compared to the substantive crime itself.

the same thing of value "for or because of any official act performed or to be performed" (section (g)). Perhaps the difference in meaning is slight, but Congress chose different language in which to express comparable ideas. The bribery section makes necessary an explicit *quid pro quo* which need not exist if only an illegal gratuity is involved; the briber is the mover or producer of the official act, but the official act for which the gratuity is given might have been done without the gratuity, although the gratuity was produced because of the official act.

Our conclusion is reinforced when the two clauses "A" and "C" are transposed in each section to be read consecutively. To accept a thing of value "corruptly . . . in return for being influenced in his performance of any official act" evidences a higher degree of criminal intent than to accept the same thing of value "otherwise than as provided by law for the proper discharge of official duty . . . for or because of any official act performed or to be performed by him." When clauses "A" and "C" are thus considered together in each section, the bribery section (c)(1) obviously prescribes a criminal intent different from and of a higher degree than that specified in the illegal gratuity section (g).

■ The different and higher requisite degree of criminal intent, then, is the additional element which is essential to make the offense of bribery under section 201(c)(1) the greater offense in relation to the lesser included offense of accepting an illegal gratuity under section 201(g).

Although neither party made in brief or oral argument the same analysis based on *Whitaker* as we have above, yet both defense and prosecution seem to agree that the element of criminal intent, however differentiated, is the vital distinction between the bribery and gratuity sections. "Under § 201(c), the Senator's defense necessarily focused upon the question whether the payments were accepted 'corruptly . . . in return for being influenced in the performance of an official act.' This defense was successful."[24] "[B]oth of these defenses were directed solely to the critical issue in the bribery case, namely corrupt intent . . . . In defending the charge under § 201(c) it was irrelevant whether or not the payments were for Brewster or another entity; the entire defense was aimed at the element of corrupt intent."[25] The prosecution agrees: "[T]he sections are distinguished in one vital regard, that of intent. Section 201(c)(1), defining the more severe of the two offenses, requires the recipient of the bribe to have the specific intent of 'being influenced in his performance of any official act.' "[26]

---

24. Appellant's Brief at 18–19.

25. Appellant's Reply Brief at 6.

26. Government Brief at 25. The Government focused on what we have labelled clause "C" in its analysis of intent, perhaps because it relied so heavily on three decisions of the Second Circuit. We do not consider them entirely relevant on the facts of Brewster's case.

In United States v. Umans, 368 F.2d 725 (2nd Cir. 1966), cert. dismissed, 389 U.S. 80, 88 S.Ct. 253, 19 L.Ed.2d 255 (1967), the defendant was convicted under both section 201(b) (bribery) and section 201(f) (gratuity) for sums he paid to an Internal Revenue agent. The Second Circuit held that section (f) was a lesser included offense of section (b), the comparable sections in Brewster's case for accepting such sums being (g) and (c). The Second Circuit distinguished the gratuity and bribery sections by the difference in intent required under section (b). 368 F.2d at 728.

The gratuity sections (f) and (g), dealing with the payment and receipt of a gratuity respectively, were primarily designed to take care of the case where the illegal payer offers a public official a gift for doing what the public official is paid to do anyway. Both the giving and receipt of gifts for doing official acts are thus forbidden. In *Umans*, in United States v. Barash, 412 F.2d 26 (2nd Cir.), cert. denied, 396 U.S. 832, 90 S.Ct. 86, 24 L.Ed.2d 82 (1969), and in United States v. Harary, 457 F.2d 471 (2nd Cir. 1972), the Second Circuit was concerned exclusively with the payment of gratuities to

appointed Government officials in the Executive Branch, IRS agents, not with elected public officials.

Thus, the Second Circuit did not face the problem in Brewster's case, *i. e.*, the application of the gratuity section (g) to an elected public official, which must be borne in mind in interpreting the Second Circuit's statements in regard to the criminal intent required in the gratuity and the bribery sections, respectively:

> [O]ne of the two statutes requires proof of an extra element to convict, a specific intent to influence official action, while the other statute only requires proof that payment was made to an agent in a situation where no payment was necessary. There are no contradictory elements of required proof between the two statutes; only additional elements of proof.
>
> . . . . .
>
> [T]he section [201(f), gratuity] makes it criminal to pay an official a sum which he is not entitled to receive regardless of the intent of either payor or payee with respect to the payment.

United States v. Umans, 368 F.2d at 728–729, 730. Taken in the abstract, it is possible to argue that the Second Circuit meant that no intent whatever was required under the gratuity section of the statute. On this interpretation, it is difficult to see how section (f) or (g) can state a criminal offense as applied to an elected public official. Every campaign contribution is given to an elected public official probably because the giver supports the acts done or to be done by the elected official. If subsection (f), and inferentially subsection (g), contain no element of criminal intent, then these sections cannot be applied to elected public officials, because then there is no distinction in the case of an elected public official between an illegal gratuity and a perfectly legitimate, honest campaign contribution.

Yet the definition of "public official" in the very outset of the bribery statute, section 201 (a), specifically names members of Congress within the category of "public official" to which *all* sections of the bribery statute—(f) and (g) as well as (b) and (c)—are to apply.

We do not necessarily disagree with the analysis of the Second Circuit in *Umans* with regard to the requisite degree of intent or lack of intent when the recipient is an Internal Revenue agent or other appointed official; we do say that where an elected public official is concerned, there is a requirement of criminal intent under section (g) as well as under section (c), and that the requisite criminal intent under section (g) is found in the words "otherwise than *as provided by law* for the proper discharge of official duty, . . . for or because of any official act performed or to be performed by him," which we have identified as comparative clauses "A" and "C" (see p. 67 *supra*).

In United States v. Barash, *supra*, the Second Circuit held that it was proper for the jury to return guilty verdicts on counts under the predecessor to the bribery section 201 (b), Act of 25 June 1948, ch. 645, § 201, 62 Stat. 691, under the current gratuity section 201(f), and under Int.Rev.Code of 1954, § 7214(a)(2). Although the court cited *Umans* without apparent disapproval, it is not clear whether the court allowed both the conviction under the predecessor bribery section and that under the gratuity section to stand. Consequently, the relevance of *Barash* to the case at bar is doubtful.

In United States v. Harary, *supra*, the issue was not whether subsection (f) required any criminal intent or the degree of criminal intent under subsection (f) compared to subsection (b). The issue turned on the lesser included offense instruction, both offenses under subsections (b) and (f) being charged as separate counts of the indictment. Under the circumstances of *Harary* there was no dispute on the facts that the alleged briber had the most corrupt criminal intent to pay the Internal Revenue agent for failing to do his duty in the examination of the income tax returns. Thus, if the acts were done with the intent in mind as confessed by the defendant Harary, this was bribery under subsection (b), although it no doubt contained whatever intent was necessary under subsection (f), and there was no valid basis on which the jury should have been permitted to make a finding on the lesser included offense. As the court stated:

> [I]f the [trial] court can conclude on the basis of the evidence presented that no reasonable man, weighing solely the evidence in light of the applicable law, could find the defendant guilty of the lesser offense and at the same time not guilty of the greater offense, no disputed factual element could be present which would compel the court to give the lesser-included offense instruction.

457 F.2d at 477. To Harary's argument that the jury might have found him not guilty of the bribery charge on the basis of his entrapment defense, the court responded that it could "see no justification whatsoever for concluding on the facts presented to us that Harary could have been entrapped into giving a bribe, but not into giving a gratuity." *Id.* at 478. Therefore, the Second Circuit held the trial judge should have sticken the lesser included offense gratuity count and put the case to the jury only on the bribery charge. *Harary* thus clearly illustrates the requirement we established in *Whitaker* that "the

We turn now to defendant's argument that, even though the gratuity offense under (g) may be embraced in the bribery offense under (c)(1), yet on our rationale in *Whitaker* "the prosecutor's right to a lesser included offense instruction [is] governed by a more meticulous test, circumscribed by 'stringent constitutional limits.' . . . Those limits relate to the fundamental due process requirement of notice and the long-standing constitutional prohibition against alterations in the charging part of the indictment." [27]

In *Whitaker* we identified two important factors relevant to these points. First, *Whitaker* established that "the idea that the simple mechanistic test of all theoretical elements of the included offense being present in the greater offense charged in the indictment . . . has not always been followed in this Circuit." [28] Instead, we expressed the essential requisite as "there must . . . be an 'inherent' relationship between the greater and lesser offenses, *i.e.*, they must relate to the protection of the same interests, and must be so related that in the general nature of these crimes, *though not necessarily invariably,* proof of the lesser offense is necessarily presented as part of the showing of the commission of the greater offense." [29]

In addition to close identity of the elements of the lesser offense to those of the greater, in *Whitaker* we did establish a second requirement, *i.e.*, there must be sufficient notice to the defendant when the indictment charges only the greater offense, to enable him to know that he may face a charge of the lesser offense as well. The " 'right of the prosecutor is limited to the offense of which defendant has been given notice by the indictment.' " [30] "This stricture" on the options of the prosecutor is to prevent him from changing "the charging part of the indictment to the jeopardy of the defendant." [31]

■ So far as a requirement of notice to defendant Brewster that at trial he would have to meet a charge based on the illegal gratuity section 201(g), we observe that any trial counsel is always on notice of Fed.R.Crim.P. 31(c), permitting an instruction to the jury and conviction on a lesser included offense, even though not specifically charged in the indictment. In Brewster's case specifically, trial counsel undeniably was also on notice of the similar language, textual proximity, and logical relationship of sections 201(c)(1) and (g), all of which raised the reasonable prospect that accepting an illegal gratuity under section (g) would be construed as a lesser offense included within accepting a bribe under section (c)(1). Given Rule 31(c), defendant therefore had ample

---

proof on the element or elements differentiating the two crimes must be sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser included offense." 144 U.S.App.D.C. at 347, 447 F.2d at 317.

27. Appellant's Brief at 17–18.

28. United States v. Whitaker, 144 U.S.App. D.C. 344, 348 n. 11, 447 F.2d 314, 318 n. 11 (1971).

29. *Id.* at 349, 447 F.2d at 319 (emphasis supplied).

30. *Id.* at 350–351, 447 F.2d at 320–321 *quoting* Kelly v. United States, 125 U.S.App. D.C. 205, 207, 370 F.2d 227, 229 (1966).

31. 144 U.S.App.D.C. at 350, 447 F.2d at 320. We reiterate the principle of *Whitaker* that there is no requirement of absolute mutuality of the ability of the prosecution and the defense to make a request for a lessor included offense instruction. It is apparent that there are circumstances when the defense might be entitled to instruction, but the prosecution not, for the reasons outlined in *Whitaker.* Even given the more limited scope of the prosecution's right to ask for the lesser included offense charge, we think it clear here that the prosecution was entitled to make such a request and that it was proper for the judge to give such a charge. The issue raised by the defense as to whether the charge was properly given with the distinctions made with sufficient clarity is another issue discussed under V, *infra.*

notice of his need to prepare a defense against an unlawful gratuity charge.[32]

To support his contention that he was deprived of proper constitutional notice of the charges he was to meet, defendant Brewster again points to two of the differences between the bribery and gratuity sections (which we have identified as comparative clauses "A" and "B"). Specifically defendant claims that the element of intent in the bribery section (c), "corruptly," which would not need to be proved in a charge under the lesser included gratuity section (g) offense, misled the defendant to center his defense principally on disproving the necessary element of intent embraced in the word "corruptly." If he had realized he was also charged or would be charged under the gratuity section (g), which does not contain the word "corruptly," he would have adopted a different emphasis in the presentation of his defense. Likewise, defendant claims he was diverted by the words "or for any other person or entity" under the bribery section (c), because, if his defense had been directed to the gratuity section (g), he would have wasted little time on this part of the offense charged, because gratuity section (g) is limited to a receipt of funds "for himself."

We think there was no lack of notice, nor any misleading prejudice to the defendant here. It is always true that the greater offense contains an element which the lesser included offense does not; this is one of the reasons for the use of the terms "greater" and "lesser" to describe the two offenses, and why the lesser is thought to be included in the greater. It will nearly always be true that the defendant will strive mightily to disprove the *extra* element in the greater offense, to escape the usually greater punishment attached to the greater crime. Ordinarily, this would simply be good trial strategy.

It is also frequently true that the defendant is successful in making a defense to the extra element necessary to prove the greater offense, in this case the criminal intent defined by "corruptly," as the defendant did here.[33] But it is precisely the defendant's usual trial strategy of concentrating on the additional element or elements involved in the greater offense, and the likelihood of his success in this strategy, that induces the prosecution to ask for the lesser included offense charge, as the prosecution did here. So this should constitute no surprise to the defense, nor do we think it did in the case at bar.

We say this the more confidently because, even though defendant's trial strategy placed great emphasis on his defense against the charge under the bribery section (c)(1), he did not entirely overlook a defense against a charge under the gratuity section (g). The defense offered evidence that the Committee was a lawful entity acting normally as a campaign fund-raising organization, which was relevant as a defense to a charge under the gratuity section, but would have been completely *irrelevant* evidence as a defense to a charge under the bribery section. Under the language of the bribery section alone, the legitimacy or illegitimacy of the "other entity" to which the payment was purportedly made would have been irrelevant and immaterial. However, evidence that the D.C. Committee was the alter ego of the defendant Brewster would have been highly relevant to a charge brought under the *gratuity* section. A contribution to an alter ego committee of the defendant could have

---

32. As a caveat, we note that in a situation where the lesser included offense statute under which a defendant was convicted is relatively remote textually from the greater offense statute under which he was charged or where the logical connection between the statutes is not so obvious or well established, we might well hold that the lesser included offense conviction could not stand for want of proper notice in the indictment. In such a situation, our holding would depend on *the precise record of the case and the* terms of the specific statutes involved.

33. "This defense was successful." Appellant's Brief at 19.

been considered as having been "for himself" under the more limited language of the gratuity section. Defendant Brewster's strategy was to cover this possible vulnerability by showing the legitimacy and separateness of the D.C. Committee, demonstrating that the defense did not ignore the possibility of a conviction under the lesser included offense of gratuity section (g).

## IV. VAGUENESS AND OVERBREADTH OF SECTION 201(g) AS APPLIED TO AN ELECTED PUBLIC OFFICIAL

■■ At the outset it is important to distinguish among three quite different matters: (1) the constitutional challenge to section 201(g) itself, which we discuss herein; (2) the distinctions to be drawn between the bribery section 201(c)(1) and gratuity section 201(g), which we have covered in Parts II and III; and (3) the clarity and correctness of the District Judge's instructions to the jury, which we analyze in Part V. For, even if sections (c)(1) and (g) appeared overlapping and duplicitous as applied to the facts of a particular case, this would be no ground for declaring one or both to be unconstitutionally vague or overbroad, so long as each intelligibly defined an offense. Nor, even if the trial judge faltered in his effort to distinguish for the jury the essential elements making for guilt under one section, guilt under the other section, or innocence under both, would this establish any constitutional infirmity in the statute.

There is no doubt that when Congress enacted section 201(g) in 1962 it intended the section should apply to its own members.[34] The entire statute, 18 U.S.C. § 201, entitled *"Bribery of public officials and witnesses,"* begins in section 201(a) by stating " 'public official' means Member of Congress, . . ."

In United States v. Brewster,[35] in holding that the Speech or Debate Clause of the Constitution did not bar the enforcement of section 201(g), the Supreme Court stated:

> To sustain a conviction it is necessary to show that [Brewster] solicited, received, or agreed to receive, money with knowledge that the donor was paying him compensation for an official act. Inquiry into the legislative performance itself is not necessary; evidence of the Member's knowledge of the alleged briber's illicit reasons for paying the money is sufficient to carry the case to the jury.[36]

■ We cannot agree with defendant's contention that "[a]s applied to the fund-raising activities of an elected political office-holder, the terms of § 201(g) are hopelessly and unconstitutionally vague, . . ."[37] It is here in his argument that the defendant seeks to profit by confusing (1) the absence in the gratuity section of the bribery section's requirement of an intent "corruptly" to accept the funds, with (2) the absence of any criminal intent at all in the gratuity section. To the contrary, the gratuity section *does* require a criminal intent, expressed by the language "otherwise than as provided by law for the proper discharge of official duty . . . for or because of any official act performed or to be performed by him" (Comparative Clauses "A" and "C").

Not only must the criminal intent defined by section (g) be proved, but also the prosecution must prove that the legislator accepted the thing of value "for himself." Thus, if a legislator knew that a contribution was being given for an official act, received the contribution and knowingly applied it to his own uses, the intent requirement of the illegal gratuity section (g) would be met.

---

34. S.Rep.No.2213, 87th Cong., 2d Sess. 7–8 (1962); H.R.Rep.No.748, 87th Cong., 1st Sess. 15 (1961), U.S.Code Cong. & Admin. News 1962, p. 3852.

35. 408 U.S. 501, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972).

36. *Id.* at 527, 92 S.Ct. at 2545.

37. Appellant's Brief at 21.

Manifestly, then, the language of section 201(g), as authoritatively interpreted by the Surpeme Court in its *Brewster* decision, "give[s] the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." [38] The section's standards are sufficiently explicit to prevent delegation of "basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." [39] Hence, section 201(g) is not impermissibly vague even under the standards applied to statutes governing the conduct of average citizens. That 201(g) is directed at the conduct of public officials, who should exercise extraordinary caution to avoid acts potentially violative of their public trust, makes us even more reluctant to accept the argument that the section is vague.[40]

The defendant further argues that section 201(g) is unconstitutionally overbroad because it reaches legitimate campaign contributions, which arguably can be characterized as the sort of political, associational activity protected by the First Amendment.[41] To the contrary, however, a public official's acceptance of a thing of value unrelated to the performance of any official act and all bona fide contributions directed to a lawfully conducted campaign committee or other person or entity are not prohibited by 201(g). What is outlawed is only the knowing and purposeful receipt by a public official of a payment, made in consideration of an official act, for himself. Congress has an indisputable interest in proscribing such conduct as a means for preserving the integrity of governmental operations. This interest supersedes any conceivable First Amendment value related to such conduct.

Nor does the defendant strengthen his constitutional argument by conjuring up hypothetical problems which may yet arise in the peripheral areas of the law's coverage. What we are concerned with is the application of the statute to the evidence in Brewster's case before us. As long as section 201(g) can be applied constitutionally to Brewster's particular conduct, we can rely on "the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court."[42]

Clearly the record supports the conclusion that application of section 201(g) to Brewster does not violate any constitutional safeguard. By crediting the prosecution's version of events, the jury could have found, first, that Senator Brewster received sums of money from Anderson, not out of general support based on his past record or insubstantial hopes for the future, but in

---

38. Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). *See also* Smith v. Goguen, 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974) ; Parker v. Levy, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974).

As we demonstrate in the text *infra*, notwithstanding any fuzziness that may blur the peripheries of section 201(g), Brewster's conduct clearly fell within its proscriptions. Since "[o]ne to whose conduct a statute clearly applies may not successfully challenge it for vagueness," Parker v. Levy, 417 U.S. at 756, 94 S.Ct. at 2562, Brewster's case is not one to convince us that the statute is unconstitutionally vague.

39. Grayned v. City of Rockford, 408 U.S. at 108–109, 92 S.Ct. at 2299.

40. The issue of whether a statute provides fair warning of the conduct it seeks to prohibit depends in part on the persons to whom and the setting in which the statute is applicable. *See* Parker v. Levy, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974) (military discipline provisions not vague) ; United States v. National Dairy Products Corp., 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963) (Robinson-Patman Act § 3, 15 U.S.C. § 13a, as statute proscribing anticompetitive business activity, not unconstitutionally vague).

41. *See, e. g.*, United States v. Robel, 389 U.S. 258, 88 S.Ct. 419, 19 L.Ed.2d 508 (1967) ; Elfbrandt v. Russell, 384 U.S. 11, 18, 86 S.Ct. 1238, 16 L.Ed.2d 321 (1966).

42. Broadrick v. Oklahoma, 413 U.S. 601, 610, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830 (1973).

well-founded consideration for his forthcoming official action on specific proposed or pending postal rate legislation. Second, the record evidence sustains the inference that Brewster had "knowledge that the donor was paying him compensation for an official act." Third, the jury could have found that Brewster personally received the money and applied it for his personal use. The Government's evidence thus indicates that the defendant engaged in conduct which falls squarely within the prohibitions of section 201(g), and we reiterate that Congress has the power to punish such conduct without breaching any barriers posed by the First Amendment.

 Finally, this is not a situation in which we will permit a defendant whose conduct may constitutionally be proscribed to attack the statute under which he was convicted on the ground that it is overbroad on its face. The language of the Supreme Court in its recent Parker v. Levy [43] decision is pertinent here:

> This Court has . . . repeatedly expressed its reluctance to strike down a statute on its face where there were a substantial number of situations to which it might be validly applied. Thus, even if there are marginal applications in which a statute would infringe on First Amendment values, facial invalidation is inappropriate if the "remainder of the statute . . . covers a whole range of easily identifiable and constitutionally proscribable . . . conduct. . . ." United States Civil Service Commission v. National Association of Letter Carriers, 413 U.S. 548, 580–581, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973). And the Court recognized in *Broadrick* [v. Oklahoma] that "where conduct and not merely speech is involved" the overbreadth must "not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep."[44]

In prohibiting personal gifts that could unduly affect a public official's performance of his duties, section 201(g) manifestly "covers a whole range of easily identifiable and constitutionally proscribable . . . conduct." The hypothetical cases in which 201(g) might conceivably infringe on First Amendment rights are at best "marginal." Finally, since the statute proscribes conduct and not merely speech, any insubstantial degree of overbreadth cannot condemn it in the face of its "plainly legitimate sweep." Therefore, we cannot hold that section 201(g) is overbroad on its face.

For the reasons stated above, the unlawful gratuity statute withstands the defendant's argument that it is vague and overbroad.

## V. THE DISTRICT COURT'S INSTRUCTIONS

Although we have held the bribery and illegal gratuity statute not to be unconstitutionally vague or overbroad as applied to elected federal officeholders, we do not cite it as a model of clarity and nicely drawn distinctions. We do find that the prohibited acts are sufficiently well defined for the guidance of any public official such as Brewster or person such as defendant Anderson in relation to a public official. And further, we believe that it is possible to draw an intelligible charge to the jury defining the difference between prohibited offenses and legal conduct in the making of political contributions.

 Where the sttaute does cause great difficulty for a trial judge, a difficulty which we hold proved fatal to the conviction in this case, is that in addition to the problem of drawing a distinction between one definable offense and innocent conduct, where both offenses are charged a trial judge must also draw a tripartite distinction between conduct with the defined intent to constitute an offense under the bribery section (c),

43. 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (19 June 1974).

44. *Id.* at 760, 94 S.Ct. at 2563.

conduct with the requisite intent to constitute an offense under the gratuity section (g), and conduct with an intent which constitutes no offense at all. The trial judge strove manfully—and judicially—to make these fine distinctions for the jury. Yet we have found it difficult ourselves, with adequate time to reflect and ponder, to understand the subtle distinctions made in the written text of the instructions. With the advantages of time, a written text, and a modicum of legal learning, we are doubtful if we comprehend fully the trial court's explanation of the subtle distinctions between guilt under one section, guilt under the other, and total innocence. We are certain that the jury could not possibly have discerned the boundary lines on the basis of these instructions, and this a jury must be able to do in order to convict a defendant on any charge.

We do not fault the District Judge here for his failure to illuminate the obscure; it may not be easy under this statute to make the tripartite distinction, although we think it is clearly possible to draw instructions making sufficiently clear the line between guilt and innocence under each subsection of section 201 taken separately. Here the real problem for the trial judge came when he had to explain the differences between receipt of a bribe, an illegal gratuity, or an innocent contribution. The difficulty in this respect will not occur on remand; since defendant Brewster has been acquitted of all charges under the bribery section, he can be retried only on the charges under the illegal gratuity section (g).

Herewith we set forth the relevant portions of the charge to the jury, illustrating the difficulties encountered, with emphasis supplied on the points we deem critical. First, the trial judge instructed the jury that in order to find defendant Brewster guilty under section 201 (c) on any count, they must find:

1. That on or about the dates set forth in those counts of the indict-

ment, defendant Brewster corruptly asked, solicited, sought, accepted, received or agreed to receive the sums of money set forth therein; and

2. That such sums of money were *received* by the defendant Brewster or by a committee on his behalf *with his knowledge of, in return for his being influenced in the future in his performance of official acts* in respect to his action, vote and decision on postal rate legislation which might at any time be pending before him in his official capacity or in his place of trust and profit.

An official act means, among other things, any decision or action or any question or matter which may at any time be pending before any public official in his official capacity or place of trust as a Senator.

To do an act corruptly means to do it voluntarily and with a bad or evil purpose to accomplish an unlawful result.

Whether defendant Brewster did in fact undertake the acts for which the bribe was given is immaterial. . . .[45]

He then turned to the gratuity section 201(g):

This offense differs from and is a lesser included offense of bribery, in that it is not necessary for the Government to prove as an element of the crime of soliciting, seeking, receiving or agreeing to receive compensation for a gratuity, that the defendant did so with the corrupt intent to be influenced in the performance of his duty as a public official.

In order to find defendant Brewster guilty of this lesser offense, the Government must prove beyond a reasonable doubt each of the following:

1. That on or about the date set forth in Counts 1, 3 and/or 5 of the indictment, defendant Brewster directly or indirectly asked, demanded, solicited, sought, accepted, received,

---

45. Trial Transcript at 1851–52, Joint App. at 361–62 (emphasis supplied).

agreed to receive the sums of money set forth therein.

2. That such sums of money were *received* by defendant Brewster *for or because of official acts to be performed in the future by him* in respect to his action, vote and decision on postal rate legislation which might at any time be pending before him in his official capacity or in his place of trust and profit.

Thus, to prove a violation of the law we are now discussing the lesser included offense, there must be proof beyond a reasonable doubt that the act of defendant Brewster in soliciting, accepting, receiving or agreeing to receive the money was done *for or because of acts to be performed by him in his official capacity* and was done *willfully and knowingly* rather than by mistake or accident. There need *not* be proof, however, that there was *any corrupt intent* on the part of defendant Brewster to be influenced in the performance of an official act.[46]

Lastly, he sought to distinguish between criminality, as he had previously defined it, and innocence, *i.e.*, an elected public official's customary acceptance of campaign contributions:

The gratuity statute [§ 201(g)] is designed to prevent a public official in dealing with an individual, from receiving from him compensation or a gratuity for any official act to be undertaken in the future. The receiving of such compensation for one's official acts in the future is a prohibited act in itself even though the official soliciting, receiving or agreeing to receive the money does not corruptly intend to be influenced in his performance of those acts because it tends subtly or otherwise to bring about preferential treatment by government employees, consciously or subconsciously, for those who give or agree to give things of value to them as opposed to those who do not.

. . . . .

In this regard, Ladies of the Jury, you are instructed that campaign contributions given to legislators with whose general positions on legislative issues a contributor agrees and in the hope only that the position will continue, is entirely proper and legal. Therefore, in order to find a violation of 201(g) you must find that defendant Brewster received the monies in question *knowing* that it was given and was *accepted for or because of an official act* he was going to undertake in the future *with respect to a particular legislative matter*.[47]

In distinguishing between the two offenses, the District Judge told the jury that in order to find the defendant Brewster guilty under the bribery section on any count, they must find that the defendant Brewster *corruptly* accepted or received, etc., the amounts of money set forth in each count. The judge went on to instruct that they must find that the money was received by the defendant *or* by a committee on his behalf "with his knowledge of, in return for his *being influenced* in the future *in his performance* of official acts." The judge then defined "corruptly" as "to do an act corruptly means to do it voluntarily and with a bad or evil purpose to accomplish an unlawful result."

Then going to the lesser included offense under the gratuity section (g), the judge first carefully pointed out that under this section it was *not* necessary for the prosecution to prove "that the defendant did so *with the corrupt intent to be influenced in the performance* of his duty as a public official." The judge then went on to specify what the Government must prove beyond a reasonable doubt, *i. e.*, "that such sums of

---

46. *Id.* at 1852–54, Joint App. at 362–64 (emphasis supplied).

47. *Id.* at 1854–55, Joint App. at 364–65 (emphasis supplied).

money were received by defendant Brewster *for or because of official acts to be performed in the future by him . . . .*" The language used earlier, "with knowledge of, and in return for," to describe the greater offense was not used here in description of the proof necessary to convict of the lesser offense. Yet, what is the *difference to the auditor* of "received . . . with his knowledge of, in return for his being influenced in the future in his performance of official acts" from "receiv[ed] . . . for or because of official acts to be performed in the future by him"? There is a semantic difference, of course, but can the words reasonably be expected to add up to something different in the mind of the jury?

While the trial judge correctly stated, in paragraph 2 in each instance, that the sums must be found to have been received respectively either "by the defendant Brewster or by a committee on his behalf" or "by the defendant Brewster," yet at no place did the judge emphasize to the jury that, to convict under the lesser included offense gratuity section, it was necessary for the jury to find that Brewster had received the sums "for himself," not for any committee.

Nor did the judge instruct the jury that under the evidence they might find that payments to the Committee were the same as payments to Brewster himself. While it was necessary under the gratuity section (g) that the jury find that Brewster received the funds "for himself," yet such a finding could have rested on another finding that the Committee was merely a conduit for Brewster.[48] But if the Committee was not an alter ego for Brewster, any payments it received were not funds received by Brewster "for himself" and could not support a conviction under section 201(g).

Thus, the jury was given no guidance to consider, first, the essential difference between the two sections of the statute as to for whom the funds must have been received in order to constitute the offense; and, second, whether receipt of funds for the Committee was equivalent to receipt of funds for Brewster.

In defining the proof necessary to convict under the lesser included offense, the judge further instructed that there must be proof that the act of the defendant in receiving the money "was done for or because of acts to be performed by him in his official capacity, and was done *willfully and knowingly* rather than by mistake or accident." In the context of the whole instruction, what does "willfully and knowingly" mean? What difference, perceptible to the jury, is there from the instruction under the greater offense that the defendant or committee had to receive the money with "his knowledge of, in return for being influenced"?

More importantly, since "willfully and knowingly" could mean that defendant Brewster *knew* when he accepted the money that he was receiving the contribution because of his record of performance in this field of postal legislation, and that if he continued such legislative actions in the future (particularly the near future) he would likely receive further contributions, how does this instruction distinguish the contribution found to be illegal here from a perfectly legitimate contribution? No politician who knows the identity and business interests of his campaign contributors is ever completely devoid of knowledge as to the inspiration behind the donation. There must be more specific knowledge of a definite official act for which the contributor intends to compensate before an official's action crosses the line between guilt and innocence.

48. Brewster conceded that if certain items of expense had not been paid for by the Committee, he personally would have been required to pay them. *Id.* at 1266, Joint App. at 279.

The likelihood of misunderstanding because of the failure at this point to distinguish between criminal and innocent acceptance of funds was enhanced by the very next sentence of the instruction on the lesser included gratuity offense: "There need *not* be proof, however, that there was *any corrupt intent* on the part of defendant Brewster to be influenced in the performance of an official act." Did this instruction rule out any criminal intent whatever under the lesser included gratuity offense? However ill-defined it may be in the exact words of the statute, there is and must be a general criminal intent on the part of the defendant to support a conviction under the gratuity section (g).

Conscious of his duty to make clear the difference between guilt under either section of the statute and normal innocent acts, the District Judge further told the jury that "campaign contributions given to legislators with whose general positions . . . a contributor agrees and in the hope only that the position will continue, is entirely proper and legal. Therefore, in order to find a violation of 201(g) you must find that defendant Brewster received the monies in question *knowing* that it was given and was *accepted for or because of an official act* he is going to undertake in the future *with respect to a particular legislative matter*."

This does help differentiate in the jury's mind between criminal and innocent acceptances of funds, if such were possible at this stage of the instructions, but only at the cost of muddying whatever clarity had been achieved earlier in distinguishing between the two criminal offenses. What is the difference between the intent defined by "knowing" plus the other language of the instruction here under section (g), and the intent required by "corruptly," as "corruptly" was defined by the trial judge under section (c) earlier? And what is the difference between "accepted for or because of an official act . . . with respect to a particular legislative matter" here under section (g), and "in return for his being influenced in the future in his performance of official acts," as the judge had charged was necessary to convict under section (c)?

Perhaps by focusing on this paragraph of the instructions alone, and by ignoring the foregoing, the jury would have been able to tell the difference between an innocent contribution and guilt on some charge, but which charge? And, of course, we cannot think that the jury paid attention only to this part of the instruction; they were obligated to digest the whole of it.

We think the whole of it was indigestible, and we do not purport to prescribe for this case or in the abstract for all cases a complete recipe or formula to enable the jury to make an intelligent determination of guilt when both offenses are charged. From our lengthy previous discussion of the graphic distinctions between the two statutes we trust a trial judge can distill the elements on which the jury should be instructed to focus. We have laid emphasis under the bribery section on "corruptly . . . in return for being influenced" as defining the requisite intent, incorporating a concept of the bribe being the prime mover or producer of the official act. In contrast under the grauity section, "otherwise than as provided by law . . . for or because of any official act" carries the concept of the official act being done anyway, but the payment only being made because of a specifically identified act, and with a certain guilty knowledge best defined by the Supreme Court itself, *i. e.,* "with knowledge that the donor was paying him compensation for an official act . . . evidence of the Member's knowledge of the alleged briber's illicit reasons for paying the money is sufficient . . . ."[49]

49. Note 36 *supra.*

A note of caution to the prosecution: in future cases before the prosecution asks for charges to the jury under both the bribery section (c) and the gratuity section (g), it should be satisfied that the charge proposed is designed to avoid the pitfalls we have found here. The prosecution might elect the safer course of only going to the jury under either the bribery section (c) or the gratuity section (g), but not under both.

The danger inherent in the situation calling for the trial judge to distinguish sharply among guilt under the bribery section, guilt under the gratuity section, and innocence under either or both, is that the jury is subconsciously tempted to compromise. If the line between the greater and lesser offense is muddy, if the distinction between knowingly accepting an illegal gratuity and cheerfully acknowledging a legitimate campaign donation is dim, then why should not the jury take the "middle ground," *i. e.,* find the defendant guilty of the offense carrying the lesser penalty? This may have happened here. A defendant is entitled to more than a possible jury room compromise, he is entitled to have his guilt or innocence voted up or down on the clearest possible lines of distinction.

## VI. CONCLUSION

In summary and conclusion we find the gratuity section (g) to be a lesser included offense within the greater offense as defined in the bribery section (c), under the standard set forth in United States v. Whitaker. We find that neither section of the statute itself is unconstitutionally vague or overbroad. We do find that the District Judge, in spite of a conscientious and valiant effort to explain, did not provide the jury with sufficiently clear lines between guilt or innocence under either of the two offenses. Therefore, for a new trial on three counts under 18 U.S.C. § 201(g) the case is

Remanded.